IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD MAJHOR, | ) CIVIL NO.  07-1465 (RBW) |
| Address: | ) |
|     Tafuna Corr. Facility | ) |
|     P.O. Box 1011 | ) PLAINTIFF'S RENEWED |
|     Pago Pago, Am. Samoa  96799 | ) MOTION FOR PRELIMINARY |
| | ) INJUNCTION;  MEMORANDUM |
|        Plaintiff, | ) OF LAW; AFFIDAVIT OF |
| | ) ERIC A. SEITZ; EXHIBITS A-L; |
|     vs. | ) PROPOSED ORDER GRANTING |
| | ) PLAINTIFF'S RENEWED |
| DIRK KEMPTHORNE, Secretary of  the | ) MOTION FOR PRELIMINARY |
| United States Department of Interior; | ) INJUNCTION; CERTIFICATE |
| TOGIOLA T. TULAFONO, Governor of | ) OF SERVICE |
| American Samoa; FEPULEA`I AFA | ) |
| RIPLEY, JR., Attorney General; | ) |
| MARK R. HALES, Assistant Attorney | ) |
| General; SOTOA M. SAVALI, Director of | ) |
| Department of Public Safety; FUEGA | ) |
| SAITE MOLIGA, Warden of Territorial | ) |
| Correctional Facility;  LBJ TROPICAL | ) |
| MEDICAL CENTER, An American Samoa | ) |
| Medical Center Authority;  CHARLES | ) |
| WARREN, Chairman of the LBJ | ) |
| Tropical Medical Center; PATRICIA | ) |
| TINDALL, Acting CEO of the LBJ | ) |
| Tropical Medical Center; ANNIE | ) |
| FUAVAI, M.D., Chairperson of the LBJ | ) |
| Tropical Medical Center Off Island Referral | ) |
| Committee; TERRY LOVELACE, General | ) |
| Counsel of LBJ Tropical Medical Center; | ) |
| and JOHN DOES 1-50, | ) |
| | ) |
|        Defendants. | ) |
| _____ | ) |

## PLAINTIFF'S RENEWED MOTION FOR PRELIMINARY INJUNCTION

Plaintiff RICHARD MAJHOR (hereinafter "Plaintiff"), by and through his undersigned attorney, hereby moves the Court for the issuance of a Preliminary Injunction requiring that the above-named Defendants and their employees, agents, representatives, and successors in office provide timely access to necessary and timely appropriate medical care and treatment, in accordance with the Eighth Amendment of United States Constitution, inter alia, while Plaintiff remains incarcerated at his current level of detention, whether in American Samoa or elsewhere, and an Order directing Defendant Secretary of the Interior to provide funds so that said medical care may be made available to Plaintiff.

This motion is brought pursuant to Rule 65, Federal Rules of Civil Procedure, inter alia, and is based upon the attached affidavit, memorandum of law, the records and files herein, and the evidence and arguments to be presented at a hearing upon the motion.

DATED:  Honolulu, Hawaii, August 30, 2007.

/s/ Eric A. Seitz
ERIC A. SEITZ
D.C. Bar No. 363830
820 Mililani Street, Suite 714
Honolulu, Hawaii  96813
Telephone:   (808) 533-7434
Facsimile:    (808) 545-3608
E-mail: eseitzatty@yahoo.com

Attorney for Plaintiff

2

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD MAJHOR, | ) CIVIL NO.  07-1465 (RBW) |
| Address: | ) |
|     Tafuna Corr. Facility | ) |
|     P.O. Box 1011 | ) |
|     Pago Pago, Am. Samoa  96799 | ) |
| | ) MEMORANDUM OF LAW |
|            Plaintiff, | ) |
| | ) |
|   vs. | ) |
| | ) |
| DIRK KEMPTHORNE, Secretary of  the | ) |
| United States Department of Interior; | ) |
| TOGIOLA T. TULAFONO, Governor of | ) |
| American Samoa; et al., | ) |
| | ) |
|         Defendants. | ) |

MEMORANDUM OF LAW

I.    Introduction

       Plaintiff RICHARD MAJHOR (hereinafter "Plaintiff") brings his

Renewed Motion for Preliminary Injunction pursuant to the August 29, 2007 Order

of this Court permitting Plaintiff to file said motion, "so long as that motion does

not seek, as the prior motion did, to enjoin the [R]espondents from continuing to

incarcerate the [P]etitioner if he is not timely provided with necessary and

appropriate medical care."  See Exhibit A, United States District Court for the

District of Columbia, Order on Motion for Reconsideration, filed on August 29, 2007.

II.   Jurisdiction

Plaintiff RICHARD MAJHOR (hereinafter "Plaintiff") seeks to vindicate and protect his rights under the Constitution and laws of the United States, and the laws of the Government of American Samoa.  Because jurisdiction of federal questions is no longer dependent upon the amount in controversy, Ralpho v. Bell, 569 F.2d 607 (DC. Cir.), the District Court has jurisdiction over this action under 28 U.S.C. Section 1331, inter alia.  King v. Andrus, 452 F.Supp. 11, 12 (D.C.D.C. 1977).

Plaintiff also states a cognizable claim against the Secretary of the United States Department of the Interior under King v. Morton, 520 F.2d 1140 (D.C. Circ. 1975) (holding that the United States District Court for the District of Columbia has jurisdiction over questions about whether the Secretary of the United States Department of the Interior's administration of the government of American Samoa meets constitutional standards, and can order the Secretary to take appropriate measures to correct any constitutional deficiencies."  See also Majhor v. Norton, Civil No. 05-2192 (D.C.D.C. 2005).

III.    Factual Background

Plaintiff is and has been incarcerated in American Samoa within the custody of Defendants DIRK KEMPTHORNE, Secretary of the United States Department of Interior (hereinafter "Secretary"), TOGIOLA T. TULAFONO, Governor of American Samoa (hereinafter "Governor"), SOTOA M. SAVALI, Director of Department of Safety of American Samoa (hereinafter "Director"), and FUEGA SAITE MOLIGA, Warden of Territorial Correctional Facility (hereinafter "Warden") since March 2003.

Since Plaintiff has been in the custody of the above-mentioned Defendants Plaintiff has suffered and continues to suffer from a serious, life-threatening medical condition which requires immediate care and attention. Defendants have not afforded Plaintiff with the appropriate medical care and treatment as required by law.

On or about February 22, 2007, Plaintiff fainted at the Tafuna Correctional Facility and was treated at the emergency room of Defendant LBJ TROPICAL MEDICAL CENTER (hereinafter "LBJ Center").  Since February 22, 2007, Plaintiff has been treated at LBJ Center's emergency room and medical clinic at least ten other times for fainting episodes during which he has suffered loss of consciousness and physical injuries to his head, inter alia.

In March 2007, Plaintiff was treated by the former Director and current staff physician at the LBJ Center, Dr. Iotamo T. Saleapaga (hereinafter "Dr. Saleapaga"), who recommended that Plaintiff be provided neurological and cardiac evaluations that cannot be performed at LBJ Center or elsewhere in American Samoa.

Between March and May 2007, Dr. Saleapaga's aforementioned recommendations were communicated orally and by electronic messages to Defendant MARK R. HALES (hereinafter "Defendant Hales") and other representatives of the Attorney General and the Governor of American Samoa.

On or about June 13, 2007, Dr. Saleapaga provided a letter in which he diagnosed Plaintiff with: (a) recurrent syncopal episodes whose etiology is unknown and (b) chronic neck pain syndrome with headaches and dizziness. In his letter Dr. Saleapaga specifically recommended that Plaintiff receive neurological evaluations including EEG, MRI and Angiography procedures, and cardiac evaluations including echocardiogram, Holter monitor and cardiac catherization procedures. Dr. Saleapaga stated further in his letter that these special neurological and cardiological procedures are not available at the LBJ Center, but are available off-island.

On or about June 14, 2007, Defendant Hales again received notice of Plaintiff's serious medical conditions and Dr. Saleapaga's recommendations when a copy of Dr. Saleapaga's June 13, 2007, letter was provided to Defendant Hales.

On June 26, 2007, after a four month period during which Plaintiff did not receive the physician-recommended care or treatment, Plaintiff filed a "Motion for Emergency Release" in the High Court of American Samoa (hereinafter "High Court") requesting that Plaintiff be allowed to travel directly to Hayward, California to receive the necessary medical care and treatment that he requires.

On July 12, 2007, the High Court heard Plaintiff's "Motion for Emergency Release" and orally ordered the Attorney General to meet with Plaintiff's counsel to "discuss the medical condition issue and set in motion appropriate action to determine the issue."  On the same day, Plaintiff again fell unconscious, remained unconscious for about ten minutes, and was taken to LBJ Center's emergency room where he received intensive care.

On July 13, 2007, the High Court issued a written order acknowledging that the American Samoa Government "is obligated to provide [Plaintiff] with proper medical care" and directing that the Attorney General "oversee a complete and thorough investigation into [Plaintiff's] present medical condition and needs for medical attention and treatment in order to properly determine whether or not [the American Samoan Government] . . . must arrange to

provide [Plaintiff] with necessary medical care outside of the Territory of American Samoa."

On July 14, 2007, Plaintiff's counsel contacted Defendant TERRY LOVELACE (hereinafter "Defendant Lovelace") via facsimile communication requesting the assistance of Defendant Lovelace in transferring Plaintiff to a suitable medical facility to allow Plaintiff to immediately receive the necessary medical care and procedures.

On July 23, 2007, Plaintiff's counsel again contacted Defendant Lovelace via facsimile communication requesting that Plaintiff be seen by a doctor immediately or that Dr. Saleapaga's June 13, 2007 letter be forwarded to the appropriate hospital committee as the basis for an off island care request.

On July 24, 2007, Plaintiff's counsel received a facsimile communication from Defendant Lovelace informing Plaintiff's attorney that he could not discuss the particulars of Plaintiff's medical history without a signed medical release authorization from Plaintiff.

Defendant Lovelace also acknowledged Plaintiff's request for immediate treatment by another physician, but apparently refused to honor this request because: (a) such request was "far outside the scope of authority," (b) Defendant Lovelace is "not a physician"; and (c)  Dr. Saleapaga's June 13, 2007 letter was simply "not addressed to the off-island Referral Committee."

6

On July 27, 2007, Plaintiff's counsel informed Defendant Governor about Plaintiff's failure to receive medical care and treatment, the High Court's July 13, 2007 order, and the continued denial of medical care and treatment for Plaintiff despite commitments from the Attorney General and Defendant Lovelace that Plaintiff would have his medical needs evaluated and that Plaintiff's case would be brought to the attention of the hospital committee that is authorized to direct off island care.

On July 27, 2007, Plaintiff's counsel also provided Defendant ANNIE FUAVAI, M.D. (hereinafter "Defendant Fuavai") with a copy of Dr. Saleapaga's medical assessment and requested that the Off Island Referral Committee, chaired by Defendant Fuavai, consider Plaintiff's case on an expedited basis and advise Plaintiff of any actions that would be taken pertaining to Plaintiff's medical care and treatment.

Since July 27, 2007, Plaintiff and Plaintiff's counsel have not received any communications from any of the Defendants or their representatives concerning Plaintiff or Plaintiff's July 27, 2007 request that the Off Island Referral Committee consider Plaintiff's medical care and treatment.

On or about August 10, 2007, Plaintiff's counsel received a telephone call from Defendant Hales advising counsel that the American Samoa Government had been in contact with the Director of the Department of Public Safety for the

State of Hawaii to inquire whether Plaintiff could be housed in a Hawaii state correctional facility while Plaintiff receives the medical care and treatment that he requires.

Defendant Hales further informed Plaintiff's counsel that the Hawaii state correctional officials would be willing to house Plaintiff contingent upon the necessary payment of expenses associated with the transfer and care that would be provided to Plaintiff in Hawaii. Finally, Defendant Hales informed counsel that the transfer process of Plaintiff could be expedited if Plaintiff was able to pay for some of the transportation and medical costs.

Since that August 10, 2007, telephone communication with Defendant Hales, there have been no further communications from any Defendant in American Samoa concerning Plaintiff. Plaintiff has not undergone any of the neurological or cardiological evaluations recommended by Dr. Saleapaga. No action has been taken to further evaluate Plaintiff to determine whether he is in need of procedures and/or care that cannot be provided to him in American Samoa.

Plaintiff continues to suffer multiple fainting episodes, loss of consciousness and has been rushed to the LBJ emergency room on multiple occasions and as recently as mid-August 2007. On or about August 20, 2007, Plaintiff was taken by an American Samoa corrections officer to LBJ Center's emergency room because of complaints of severe head pains. At the emergency

room Plaintiff was examined by a physician who then explained that he could not treat Plaintiff without authorization from a representative of Defendant LBJ Center's administration. The physician then contacted Defendant Lovelace and was instructed by Defendant Lovelace not to provide any treatment to Plaintiff.

Plaintiff is also apparently being denied his previously prescribed pain medications for pre-existing migraines and other neurological treatments in response to Plaintiff's counsel's efforts to ensure that Plaintiff receives the basic medical care and treatment to which he is entitled under the United States Constitution.

IV.    Standards for Preliminary Injunction

To obtain preliminary injunctive relief Plaintiff must demonstrate (i) a substantial likelihood of success on the merits; (ii) that Plaintiff will suffer irreparable harm absent the relief requested; (iii) that other interested parties will not be harmed if the requested relief is granted; and (iv) that the public interest supports granting the requested relief. See e.g., Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C.Cir. 2006); Cobell v. Norton, 391 F.3d 251, 258 (D.C.Cir. 2005); Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060, 1066 (D.C. Cir. 1998); CityFed Financial Corp. v. Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995).

In applying this four-factored standard, courts employ a sliding scale under which a particularly strong showing on one factor can compensate for weakness in another.  See CityFed Fin., 58 F.3d at 747.  Thus, "[a]n injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury."  Id.  Nevertheless, "[i]t is particularly important for the [Plaintiff] to demonstrate a substantial likelihood of success on the merits."

Furthermore, Plaintiff must also demonstrate at lease some irreparable injury because "[t]he basis of injunctive relief in the federal courts has always been irreparable harm."  CityFed Fin., 58 F.3d at 747.  Injury is irreparable only if it is "both certain and great."  Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.Cir. 1985).  This means that the alleged harm "be actual and not theoretical" and "'of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'"  Id. (quoting Ashland Oil, Inc. v. FTC, 509 F.Supp. 297, 307 (D.C.D.C.), aff'd, 548 F.2d 977 (D.C.Cir. 1976).

## V.    Argument

    A.    Plaintiff's substantial probability of success on the merits warrants the issuance of preliminary injunctive relief.

Plaintiff is entitled to preliminary injunctive relief because his likelihood of success on the merits of his Eighth Amendment claim is substantial.

The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976 (1994). "Conditions of confinement can constitute an Eighth Amendment violation when two elements are present. The first . . . element is that the act or omission at issue must be 'sufficiently serious,' that is the condition to which the prisoner is subjected must pose a 'substantial risk of harm.'" <u>Anderson-Bey v. District of Columbia</u>, 466 F.Supp.2d 51, 61 (D.C.Cir. 2006) (quoting <u>Farmer</u>, 511 U.S. at 834). "The second . . . element goes to the prison official's state of mind: the [Defendants] must have acted with deliberate indifference to the inmates' health or safety." <u>Anderson-Bey v. District of Columbia</u>, 466 F.Supp. 2d at 61 (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 738, 122 S.Ct. 2508, 253 (2002)).

As to the first element, the failure of Defendants to provide basic medical evaluations is "sufficiently serious" to expose Plaintiff to "substantial risk[s] of harm." The uncontroverted evidence on the record shows that Dr. Saleapaga diagnosed Plaintiff with recurrent sycopal or fainting episodes and chronic neck pain syndrome with headaches and dizziness. During the July 12, 2007 episode, Plaintiff fell unconscious and remained unconscious for about ten minutes. The record also demonstrates that Plaintiff has suffered through at least nine of these fainting episodes in a seven month period between February and mid-August 2007.

11

In addition to Dr. Saleapaga's diagnosis, Dr. Irwin Schatz, a cardiologist and distinguished professor at the University of Hawaii John A. Burns School of Medicine, "concur[s] with Dr. Saleapaga's recommendations that [Plaintiff] requires neurology and cardiology evaluations."  See Exhibit K, Affidavit of Irwin J. Schatz, M.D., Dated August 29, 2007.  Dr. Schatz's affidavit notes that "[b]ecause of the reported frequency and seriousness of [Plaintiff's] sycopal episodes, it is [his] professional opinion that the recommendations of Dr. Saleapaga should be followed immediately."  Id.  Dr. Schatz further notes that he would "immediately schedule the patient for the recommended evaluations and tests due to the seriousness of [Plaintiff's] reported symptoms and the urgency to diagnose and treat and/or rule out potentially life threatening conditions."  Id.

In light of Dr. Saleapaga's diagnosis and Dr. Schatz's affidavit, there is no question that Plaintiff has a serious need for medical treatment in light of these regular fainting spells.  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (stating that "the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment.")

As to the second element, Defendants clearly have acted with "deliberate indifference" to Plaintiff's health and safety.  Prison officials act with

deliberate indifference when they ignore the instructions of a prisoner's treating physician and/or intentionally deny or delay access to medical treatment for non-medical reasons or interfere with treatment prescribed. <u>Wakefield v. Thompson</u>, 177 F.3d 1160 (9th Cir. 1999) (reversing a dismissal of an inmate's Section 1983 action where the inmate alleged prison officer refused to provide him with prescribed psychotropic medication upon his release from prison); <u>Benter v. Peck</u>, 825 F.Supp. 1411, at 1417 (S.D. Iowa 1993) (ruling that deliberate indifference is established if necessary medical treatment is delayed for non-medical reasons) <u>Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 245, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983) (ruling that the government must pay for medical care that it has a constitutional duty to provide if that is the only way the care can be provided); <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1509 (11th Cir. 1991) (lack of funds allocated for prisons by the state legislature will not excuse the failure of correctional systems to maintain a certain minimum level of medical services necessary to avoid the imposition of cruel and unusual punishment).

   In the instant case, Defendants have acted with deliberate indifference by ignoring the recommendations of Dr. Saleapaga, Plaintiff's treating physician, that Plaintiff receive basic neurological evaluations that include EEG, MRI and Angiography procedures, as well as cardiac evaluations that include echocardiogarms, holter monitor and cardiac catherization procedures. Defendants

clearly know about the regularity of Plaintiff's fainting episodes and the need for further evaluation based on: (1) oral and electronic communications with Defendant Hales and representatives of the Attorney General and the Governor of American Samoa between March and May 2007; (2) Dr. Saleapaga's June 13, 2007 letter which was provided to Defendant Hales on June 14, 2007; (3) Plaintiff's "Motion for Emergency Release" which he filed on June 26, 2007; (4) Plaintiff's counsel's communications between July 14 and July 27, 2007, with Defendants Lovelace, Governor, and Fuavai; and (5) Defendant Hales' telephone conversation with Plaintiff's counsel as recently as August 10, 2007 about Plaintiff's possible transfer to correctional facilities in Hawaii. Even if Defendants disagree with Dr. Saleapaga's diagnosis and recommendations, nothing in the record demonstrates an attempt by Defendants to further diagnose or treat Plaintiff for his multiple fainting spells.

In a frighteningly similar situation, Chief Justice John Roberts recently suffered a seizure on July 30, 2007 which was reported as "a benign idiopathic seizure." See Exhibit L, Sherman, Mark, "Chief Justice Roberts Suffers Seizure," http://news.yahoo.com/s/ap/20070730/ap_on_go_su_co/scotus_roberts, visited July 30, 2007. Justice Roberts reportedly had suffered in January 1993 from another "isolated, idiosyncratic seizure." Id. Doctors for Justice Roberts immediately provided Justice Roberts with a "thorough neurological evaluation"

that included "an MRI and other tests to conclude there was no tumor, stroke or other explanation." Id.  Plaintiff, who has suffered even more regular fainting episodes than Justice Roberts, is entitled to the basic medical care that Justice Roberts received for his condition that appears to be far less worse than Plaintiff's chronic and recurring condition.

      B.    The possibility of irreparable injury, and even death of Plaintiff warrant the issuance of preliminary injunctive relief.

If Defendants are allowed to persist with not providing even the most basic medical care that has been recommended by Defendant LBJ Center's own physician, it is obvious that the likelihood is great that Plaintiff will suffer irreparable injury, and perhaps even death, as a result of Defendants' continued and deliberate indifference.  As reported in the case of Justice Roberts' "benign seizure, . . an MRI and other tests" were conducted "to conclude there was no tumor, stroke or other explanation."  Id.

Clearly, the medical staff at the LBJ Center and Defendants know that Plaintiff has regular fainting spells, but they do not have the capacity to determine if these are being caused by a tumor, stroke or other life-threatening conditions. Based on Dr. Schatz's affidavit, the "seriousness of [Plaintiff's] reported symptoms," including the "frequency and seriousness" of the continued fainting spells warrants further investigation "to diagnose and treat and/or rule out potentially life threatening conditions" as such diagnosis and treatments would

occur through the regular procedures conducted routinely at other hospitals.  <u>See</u> Exhibit K.

VI.    <u>Conclusion</u>

For all of the foregoing reasons, Plaintiff submits that this Court must issue an order that Plaintiff immediately be provided the necessary and appropriate medical care and treatment consistent with the Eighth Amendment to the United States Constitution and the appropriate standard of care.  If the Defendants in American Samoa and/or the Government of American Samoa are unable to provide the funding for the necessary and appropriate medical care as mandated by the Eighth Amendment, then Plaintiff respectfully requests that Defendant Secretary of the Interior provide funds so that medical care consistent with the United States Constitution be made available to Plaintiff.

At a minimum, the issuance of this preliminary injunctive relief will protect the rights, interests, and well-being of Plaintiff such that Plaintiff will be free from imminent injury and harm due to the failure of Defendants to act and until such time as the parties may conduct discovery and resolve the remaining matters through appropriate litigation or other means.

/
/
/
/
/

DATED:  Honolulu, Hawaii, August 30, 2007


/s/ Eric A. Seitz
ERIC A. SEITZ
D.C. Bar No. 363830
820 Mililani Street, Suite 714
Honolulu, Hawaii  96813
Telephone:   (808) 533-7434
Facsimile:    (808) 545-3608
E-Mail: eseitzatty@yahoo.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD MAJHOR, | ) CIVIL NO.  07-1465 (RBW) |
| Address: | ) |
|     Tafuna Corr. Facility | ) |
|     P.O. Box 1011 | ) |
|     Pago Pago, Am. Samoa  96799 | ) |
| | ) AFFIDAVIT OF ERIC A. SEITZ; |
|       Plaintiff, | ) EXHIBITS A-L |
| | ) |
| vs. | ) |
| | ) |
| DIRK KEMPTHORNE, Secretary of  the | ) |
| United States Department of Interior; | ) |
| TOGIOLA T. TULAFONO, Governor of | ) |
| American Samoa; et al., | ) |
| | ) |
|       Defendants. | ) |

AFFIDAVIT OF ERIC A. SEITZ

| | |
|---|---|
| STATE OF HAWAII | ) |
| | ) SS. |
| CITY AND COUNTY OF HONOLULU | ) |

ERIC A. SEITZ, being first duly sworn on oath, deposes and says:

(1)    I am the principal attorney and attorney of record for Plaintiff

RICHARD MAJHOR (hereinafter "Plaintiff") in the above entitled matter and in

the ongoing criminal proceeding in the High Court of American Samoa

(hereinafter "High Court"), App. No. 05-06; HCCR No. 10-03.

(2)     In a Judgment filed herein on May 18, 2006, the High Court sentenced Plaintiff to terms of life imprisonment for Count I, seven years for Count II to run concurrently with each other; and terms of five years for Count III and five years for Count IV to run concurrent with each other and consecutively to the Count I and Count II terms.

(3)     In March 2007, I was informed that Plaintiff was treated by the former Director and current staff physician at the LBJ Center, Dr. Iotamao T. Saleapaga, who recommended orally that Plaintiff be provided neurological and cardiac evaluations that cannot be performed at LBJ Center or elsewhere in American Samoa.

(4)     Between March and May 2007, my office immediately informed Defendant Mark R. Hales and representatives of the Attorney General and the Governor of American Samoa, both orally and though electronic communications, about Dr. Saleapaga's recommendations because of the nature of Plaintiff's diagnosis and the urgency of the procedures and medical treatment.

(5)     On June 13, 2007, Dr. Saleapaga provided a written letter in which he diagnosed Plaintiff with: (a) recurrent sycopal episodes whose etiology is unknown and (b) chronic neck pain syndrome with headaches and dizziness.  Dr. Saleapaga also recommended that Plaintiff receive neurological evaluations including EEG, MRI and Angiograthy procedures, and cardiology evaluations

including echocardiogram, Holter monitor and cardiac catherization procedures.
Lastly, Dr. Saleapaga stated that "[t]hese special procedures are not available at
LBJ Medical Center, American Samoa but off-island."  <u>See</u> Letter dated June 13,
2007 from Iotamo T. Saleapaga, M.D..  A true and correct copy of this letter is
attached hereto as Exhibit A.

(6)    On June 26, 2007, Plaintiff filed a "Motion for Emergency
Release" in the High Court requesting an emergency release from the Tafuna
Correctional Facility on the basis of Plaintiff's right to receive essential medical
care as guaranteed by the Eighth Amendment to the United States Constitution.
<u>See</u> "Motion for Emergency Release," filed on June 26, 2007.  A true and correct
copy of this motion is attached hereto as Exhibit B.

(7)    On July 12, 2007, on behalf of Plaintiff, I appeared before the
High Court to argue Plaintiff's "Motion for Emergency Release."  At this hearing,
the High Court ordered the Attorney General to "meet with [Plaintiff's counsel] . . .
to discuss the medical condition issues and set in motion appropriate action to
determine the issue.

(8)    Following the July 12, 2007 hearing, I met with Attorney
General Ripley and two of his deputies, at which time I believed that these
representatives understood the urgency of Plaintiff's situation and that a
commitment was made to follow through with the High Court's directives.

(9)     On July 13, 2007, the High Court issued its written order that acknowledges that the American Samoa Government "is obligated to provide [Plaintiff] with proper medical care" and directs Defendant Attorney General to "oversee a complete and thorough investigation into [Plaintiff's] medical condition and needs for medical attention and treatment in order to determine whether or not [Plaintiff] . . . must arrange to provide [Plaintiff] with necessary medical care outside of the Territory of American Samoa." See "Follow-Up Order on Defendant's Medical Condition Determination" at 2, filed on July 13, 2007.  A true and correct copy of the High Court's July 13, 2007 Order is attached hereto as Exhibit C.

(10)    On July 14, 2007, I contacted Defendant Lovelace via facsimile communication to request assistance for Plaintiff to be "transferred to a suitable medical facility" and pointed out that Plaintiff's falls and loss of consciousness "create a sufficient basis for the hospital to refer [Plaintiff] to the committee that authorizes off-island care without any additional formal request." See July 14, 2007 facsimile communication to Defendant Lovelace.  A true and correct copy of this facsimile communication is attached hereto as Exhibit D.

(11)    Nine days later, on July 23, 2007, I again contacted Defendant Lovelace via facsimile communication requesting that, because of the urgency of the situation, Plaintiff be seen by a doctor immediately or that Dr. Saleapaga's June

13, 2007 letter be forwarded to the appropriate hospital committee as the basis of a request for off island care." <u>See</u> July 23, 2007 facsimile communication to Defendant Lovelace. A true and correct copy of this facsimile communication is attached hereto as Exhibit E.

(12)    On July 24, 2007, I received a facsimile communication from Defendant Lovelace informing me that he could not discuss the particulars of Plaintiff's medical history with me without a signed medical release authorization from Plaintiff. Defendant Lovelace acknowledged Plaintiff's request for immediate treatment by another physician but refused to honor this request because: (a) such request was "far outside the scope of authority," (b) Defendant Lovelace is "not a physician"; and (c) Dr. Saleapaga's June 13, 2007 letter "was not addressed to the off-Island Referral Committee." <u>See</u> July 24, 2007 facsimile communication from Defendant Lovelace. A true and correct copy of this facsimile communication is attached hereto as Exhibit F.

(13)    On July 27, 2007, I informed Defendant Governor, via facsimile communication, about Plaintiff's failure to receive medical care and treatment, the High Court's July 13, 2007 order, and the continued denial of medical care and treatment for Plaintiff despite commitments from the Attorney General and Defendant Lovelace that Plaintiff would have his medical needs evaluated and that Plaintiff's case would be brought to the attention of the hospital

committee that is authorized to direct off island care.  See July 27, 2007 facsimile communication to Defendant Governor.  A true and correct copy of this facsimile communication is attached hereto as Exhibit G.

(14)    On July 27, 2007, I also provided Defendant Fuavai, via facsimile communication, a copy of Dr. Saleapaga's medical assessment and requested that the Off Island Referral Committee, chaired by Defendant Fuavai, consider Plaintiff's case on an expedited basis and advise Plaintiff of any actions that would be taken pertaining to Plaintiff's medical care and treatment.  See July 27, 2007 facsimile communication to Defendant Fuavai.  A true and correct copy of this facsimile communication is attached hereto as Exhibit H.

(15)    Since July 27, 2007, Plaintiff and I have not received any communications from any of the Defendants or their representatives concerning Plaintiff's request that the Off Island Referral Committee review Plaintiff's case to consider off island care and treatment for his serious medical conditions.

(16)    Since July 27, 2007, I am also informed and believe that Plaintiff continues to require medical treatment at the LBJ Center, and that at least on two occasions, on July 31, 2007 and August 2, 2007, Plaintiff was taken to the LBJ Center.  I am informed that Plaintiff has still yet to undergo the basic neurological and cardiac evaluations recommended by Dr. Saleapaga.

(17)   I am informed and believe that given the financial situation in American Samoa Defendant LBJ cannot and will not pay for any costs associated with Plaintiff's "off island" care even if such care is determined to be required. See Exhibit I, a true and correct copy of a recent news article in which it was reported that the LBJ budget for "off island" care for calendar year 2007 was exhausted in April 2007, and that there currently are long delays in providing and arranging for medical care for residents of American Samoa who may have urgent medical needs.

(18)   On or about August 10, 2007, I received a telephone call from Defendant Hales advising me that the Government of America Samoa had been in contact with the Director of the Department of Public Safety for the State of Hawaii to inquire whether Plaintiff could be housed in a state correctional facility in Hawaii while he receives the medical procedures and treatment that he requires.

(19)   Defendant Hales informed me that Hawaii state corrections officials had indicated their willingness to house Plaintiff contingent upon the necessary payment of expenses associated with the transfer and care that he would be provided in Hawaii.

(20)   Defendant Hales then informed me that the process might be expedited if Plaintiff is able to pay for some of the transportation and medical costs; however, I reminded Defendant Hales that Plaintiff had been incarcerated

for several years and that all of his assets were seized, so Plaintiff has no financial resources or available insurance to cover any of the costs for the medical care he requires.

(21)    Since the aforementioned telephone call on August 10, 2007, I have not received any communications from anyone in American Samoa concerning Plaintiff or Plaintiff's request for immediate medical care and treatment.

(22)    In the meantime, I am informed that Plaintiff has continued to suffer fainting episodes and loss of consciousness and has been rushed to the LBJ emergency room on additional occasions, including July 31, 2007, and August 2, 2007.  <u>See</u> Exhibit J, Vicki Majhor, Plaintiff's Mother, Email Correspondence Received on August 5, 2007.

(23)    Moreover, I am informed and believe that Plaintiff now is being denied his previously prescribed pain medications for pre-existing migraine and other neurological treatments in response to our efforts to ensure that Plaintiff receives the basic medical care and treatment to which he is entitled under the United States Constitution.  <u>See</u> Exhibit J, Vicki Majhor, Plaintiff's Mother, Email Correspondence Received on August 5, 2007.

(24)    On or about August 21, 2007, I spoke by telephone with Plaintiff.  In my conversation with Plaintiff, he informed me that on Monday

evening, August 20, 2007, he was taken by American Samoa corrections officers to Defendant LBJ Center's emergency room because of severe head pains he was experiencing.

(25)    I am informed that Plaintiff was examined by a LBJ Center physician who explained to Plaintiff that he could not treat Plaintiff without authorization from a representative of Defendant LBJ Center's hospital administration.

(26)    I am further informed that the physician treating Plaintiff contacted Defendant Lovelace.  The physician was, thereafter, instructed by Defendant Lovelace not to provide any treatment to Plaintiff.

(27)    On or about August 29, 2007, Dr. Irwin R. Schatz, a distinguished cardiologist and professor at the University of Hawaii John A. Burns School of Medicine, reviewed the August 13, 2007 letter by Dr. Saleapaga and concluded that the urgency of Plaintiff's conditions would require immediate attention and care.  See Exhibit K, Affidavit of Irwin J. Schatz, M.D., Dated August 29, 2007.

(28)    On or about July 30, 3007, United States Supreme Court Chief Justice John Roberts recently suffered a seizure which was reported as "a benign idiopathic seizure."  See Exhibit L, Sherman, Mark, "Chief Justice Roberts Suffers Seizure," http://news.yahoo.com/s/ap/20070730/ap_on_go_su_co/scotus_roberts,

9

visited July 30, 2007.  A true and correct copy of this news story is attached as

Exhibit L.  On the basis of this news story, I am informed and believe that in

response to this "benign seizure," Chief Justice Roberts received "MRI and other

tests to conclude there was no tumor, stroke or other explanation."  See id.


/s/ Eric A. Seitz
ERIC A. SEITZ



Subscribed and sworn before me
this 30th day of August , 2007

/s/ Juli T. Seitz
Notary Public, State of Hawaii
My commission expires: 1/4/08




# LBJ Tropical Medical Center

P.O. Box LBJ
Pago Pago, American Samoa 96799

### Internal Medicine Services

*Commitment to Healthcare Excellence*

June 13, 2007

TO WHOM IT MAY CONCERN:

Re:   Richard Majhor
DOB: 6/16/71
SSN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
LBJ Hosp#17-58-28

Mr. Richard is a 36 year-old male with a known history of chronic neck pain syndrome with headache and dizziness and recurrent syncopal episode. Chart review revealed he was initially seen at LBJ Medical Center in American Samoa on 7/25/01 for chronic neck pain syndrome associated with headaches and dizziness. He stated he was involved in a motor vehicle accident when he was 17 years old. Since then he had been followed up in the medical clinic and emergency room for the same problem till now. On 2003 July 3 he developed Insomnia. On 2/22/07 he presented to the emergency room for fainting at the Tafuna Correctional Facility. According to the medical record review he was seen in the emergency room and medical clinic 9 times for syncopal episode. He was last seen on 6/5/07. At the same time has pain neck associated with severe headaches.

Since 7/25/01, he had been on Tylenol#3, Vicodin, Percocet, Demerol and Xanax. Had been on anti-inflammatory Naprosyn 375 mg bid. His CT Scan of neck revealed some evidence of old injury. CT Scan of brain was negative for any space occupying lesion. His EKG was negative for cardiac arrhythmia or any acute changes. His chemistry and complete blood count normal. His physical exam today 6/13/07 is unremarkable except tenderness of posterior neck with limited full range of motion due to pain. Neurologically he is intact.

### IMPRESSION:
   (1)   Recurrent syncopal episode etiology unknown.
   (2)   Chronic neck pain syndrome with headaches and dizziness status post neck injury.

## EXHIBIT A

Page –2–

This patient needs neurology evaluation to include EEG, MRI and may be Angiograthy.    He also needs cardiology evaluation which may include Echocardiogram, Holter monitor and may be cardiac catherization. These special procedures are not available at LBJ Medical Center, American Samoa but off-island.

Sincerely,

IOTAMO T. SALEAPAGA, M.D.

/jl

ERIC A. SEITZ
ATTORNEY AT LAW
A LAW CORPORATION

ERIC A. SEITZ
LAWRENCE I. KAWASAKI
RONALD N.W. KIM
820 Mililani Street, Suite 714
Honolulu, Hawaii 96813
Telephone:    (808) 533-7434
Facsimile:    (808) 545-3608
E-mail: eseitzatty@yahoo.com

ANDREW T. STAVE
c/o Rose, Joneson, Vargas P.C.
P.O. Box 3501
Pago Pago, American Samoa 96799
Telephone: (684) 699-2100

Attorneys for Defendant-Appellant
Richard Majhor

## IN THE HIGH COURT OF AMERICAN SAMOA

### TRIAL DIVISION

| | | |
|---|---|---|
| RICHARD MAJHOR, | ) | APP. No. 05-06 |
| | ) | HCCR No. 10-03 |
| Defendant-Appellant, | ) | |
| | ) | DEFENDANT-APPELLANT'S |
| v. | ) | MOTION FOR EMERGENCY RELEASE; |
| | ) | AFFIDAVIT OF ERIC A. SEITZ; |
| AMERICAN SAMOA GOVERNMENT, | ) | EXHIBIT 1; CERTIFICATE OF |
| | ) | SERVICE |
| Plaintiff-Appellee. | ) | |
| | ) | |

### DEFENDANT-APPELLANT'S MOTION FOR EMERGENCY RELEASE

COMES NOW Defendant-Appellant Richard Majhor by and through his

undersigned attorneys and hereby moves this Court for his emergency release from the Tafuna

Correctional Facility. This motion is brought pursuant to Rules 46(c) and 47 of the Rules of

# EXHIBIT B

Criminal Procedure of the High Court of American Samoa, Rule 9 of Appellate Court Rules of

the High Court of American Samoa, and Mr. Majhor's right to receive essential medical care

guaranteed by the Eighth Amendment to the United States Constitution, and is based upon the

attached affidavit, exhibit, the entire records and files herein, and any argument to be presented

at a hearing upon this motion.

DATED:    Honolulu, Hawaii, _____ JUN 2 8 _____, 2007.

ERIC A. SEITZ
LAWRENCE I. KAWASAKI
RONALD N.W. KIM
ANDREW T. STAVE

Attorneys for Defendant-Appellant
Richard Majhor

2

IN THE HIGH COURT OF AMERICAN SAMOA

TRIAL DIVISION

|  |  |  |
|---|---|---|
| RICHARD MAJHOR, | ) | APP. No. 05-06 |
| | ) | HCCR No. 10-03 |
| Defendant-Appellant, | ) | |
| | ) | AFFIDAVIT OF ERIC A. SEITZ |
| v. | ) | |
| | ) | |
| AMERICAN SAMOA GOVERNMENT, | ) | |
| | ) | |
| Plaintiff-Appellee. | ) | |
| | ) | |

AFFIDAVIT OF ERIC A. SEITZ

|  |  |  |
|---|---|---|
| STATE OF HAWAII | ) | |
| | ) | SS. |
| CITY AND COUNTY OF HONOLULU | ) | |

ERIC A. SEITZ, being first duly sworn on oath, deposes and says:

(1)    I am lead counsel for Defendant-Appellant Richard Majhor (hereinafter "Mr. Majhor") in the above entitled manner.

(2)    Mr. Majhor currently is incarcerated at the Tafuna Correctional Facility (hereinafter "TCF") pending the outcome of his conviction and sentence of life imprisonment in this matter.

(3)    Since approximately March 2007, we have been contacting the Attorney General of American Samoa regarding Mr. Majhor's deteriorating medical condition which requires examinations and treatments that are not available in the territory of American Samoa.

(4)    Attached hereto as Exhibit "1" is a true and correct copy of Dr. Iotamo T. Saleapaga, M.D.'s professional evaluation of Mr. Majhor's condition along with his recommendation that Mr. Majhor receive neurology and cardiology evaluations that are not

available at the LBJ Tropical Medical Center in American Samoa, but which are available off-island.

(5)  I am therefore requesting Mr. Majhor's emergency release from TCF for medical purposes subject to the following terms and conditions:

(a)  Mr. Majhor will travel directly to Hayward, California and reside with his mother, Vicki Majhor, at 25200 Carlos Bee Boulevard, #191, Hayward, California, 94542; Ms. Majhor will provide for Mr. Majhor's transportation and housing and pay for the necessary medical tests and any recommended follow up care;

(b)  the term of Mr. Majhor's release from TCF will be for up to sixty (60) days, subject to this Court's review after thirty (30) days based upon further medical documentation from Mr. Majhor's medical evaluation and treatment in California, which we will submit to this Court;

(c)  this Court can shorten or lengthen Mr. Majhor's term of release upon further application by either party;

(d)  we are willing to post $5,000 cash bail to secure Mr. Majhor's return; and,

(e)  Mr. Majhor will not contact any of the government's witnesses in the trial proceedings of this matter, nor any member of Wyatt Bowles' family.

(6)  We have contacted the Attorney General of American Samoa's office regarding Mr. Majhor's release for medical reasons, but that office has not definitively stated its position on this matter.

(7)  Applicable decisions of the United States Supreme Court following the case of Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), establish that under

2

the Eighth Amendment to the United States Constitution, the Government of American Samoa has a clear obligation to provide adequate medical care for its prisoners, and could be subject to damages and injunctive relief under 42 United States Code Section 1983 for failing to timely and properly address Mr. Majhor's serious medical care needs.

(8)    Mr. Majhor does not present a flight risk, nor will he pose a danger to any person in American Samoa due to his medical condition and pursuant to the proposed terms and conditions of his release.

(9)    I am hereby requesting that this Court hear this motion on a date between July 9 and 12, 2007, when I am scheduled to be in American Samoa for the oral argument of Mr. Majhor's appeal case.

_____

ERIC A. SEITZ

Subscribed and sworn to before me this
26th day of _____June_____ 2007.

_____
Notary Public, State of Hawaii
My Commission Expires: 1/4/08

3





## LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa 96799

### Internal Medicine Services



mmilment to Healthcare
Excellence

June 13, 2007

TO WHOM IT MAY CONCERN:

Re:    Richard Majhor
       DOB: 6/16/71
       SSN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
       LBJ Hosp#17-58-28

Mr. Richard is a 36 year-old male with a known history of chronic neck pain syndrome with headache and dizziness and recurrent syncopal episode. Chart review revealed he was initially seen at LBJ Medical Center in American Samoa on 7/25/01 for chronic neck pain syndrome associated with headaches and dizziness. He stated he was involved in a motor vehicle accident when he was 17 years old. Since then he had been followed up in the medical clinic and emergency room for the same problem till now. On 2003 July 3 he developed Insomnia. On 2/22/07 he presented to the emergency room for fainting at the Tafuna Correctional Facility. According to the medical record review he was seen in the emergency room and medical clinic 9 times for syncopal episode. He was last seen on 6/5/07. At the same time has pain neck associated with severe headaches.

Since 7/25/01, he had been on Tylenol#3, Vicodin, Percocet, Demerol and Xanax. Had been on anti-inflammatory Naprosyn 375 mg bid. His CT Scan of neck revealed some evidence of old injury. CT Scan of brain was negative for any space occupying lesion. His EKG was negative for cardiac arrhythmia or any acute changes. His chemistry and complete blood count normal. His physical exam today 6/13/07 is unremarkable except tenderness of posterior neck with limited full range of motion due to pain. Neurologically he is intact.

### IMPRESSION:
(1)    Recurrent syncopal episode etiology unknown.
(2)    Chronic neck pain syndrome with headaches and dizziness status post neck injury.

## EXHIBIT 1

Page –2-

This patient needs neurology evaluation to include EEG, MRI and may be Angiograthy.    He also needs cardiology evaluation which may include Echocardiogram, Holter monitor and may be cardiac catherization. These special procedures are not available at LBJ Medical Center, American Samoa but off-island.

Sincerely,

IOTAMO T. SALEAPAGA, M.D.
/ri

CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that one copy of the within was duly served on this

date by depositing the same addressed to the following at his courthouse mailbox or by personal

delivery at the address listed below:

> MARK R. HALES, ESQ.
> TERRY LOVELACE, ESQ.
> Assistant Attorney Generals
> Office of the Attorney General
> American Samoa Government
> Post Office Box 7
> Pago Pago, American Samoa 96799

DATED:        Honolulu, Hawaii, _____ JUN 2 6 _____, 2007.

> ERIC A. SEITZ
> LAWRENCE I. KAWASAKI
> RONALD N.W. KIM
> ANDREW T. STAVE
>
> Attorneys for Defendant-Appellant
> Richard Majhor

**HIGH COURT OF AMERICAN SAMOA**
Clerk's Office

FILED TIME: 2:33pm

7/13/07
CLERK OF COURTS

IN THE HIGH COURT OF AMERICAN SAMOA

TRIAL DIVISION

| | |
|---|---|
| AMERICAN SAMOA GOVERNMENT, | ) CR No. 10-03 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | FOLLOW-UP ORDER ON |
| ) | DEFENDANT'S MEDICAL |
| RICHARD P. MAJHOR, ) | CONDITION DETERMINATION |
| ) | |
| Defendant. ) | |

Before RICHMOND, Associate Justice, and SAGAPOLUTELE, Associate Judge.

Counsel:   For Plaintiff, Mark R. Hales, Assistant Attorney General
           For Defendant, Eric A. Seitz, *Pro Hac Vice,* and Andrew T. Stave

On February 16, 2006, the jury found Defendant guilty of four crimes: murder in the first degree (Count I), felonious restraint (Count II), tampering with physical evidence (Count III), and property damage in the first degree (Count IV). On May 18, 2006, the Court adjudicated Defendant guilty of the four offenses, and sentenced Defendant to terms of life imprisonment on Count I and seven years imprisonment on Count II, concurrently with each other, and terms of five years imprisonment on Count III and five years imprisonment on Count IV, concurrently with each other and consecutively to the Count I and Count II terms. Defendant is presently serving his sentence as a prisoner at Plaintiff's Correctional Facility.

CR No. 10-03  FOLLOW-UP ORDER ON
DEFENDANT'S MEDICAL
CONDITION

1

EXHIBIT C

On July 12, 2007, the Court heard Defendant's motion concerning his current medical condition. Specifically, Defendant asked the Court to grant his request for emergency medical release to receive treatment in California for what he states is a "serious" medical condition. Defendant, his counsel, and Plaintiff's counsel were present. The Court ordered the Attorney General to meet with counsel Eric A. Seitz before Seitz departed the territory on the same date, July 12, 2003, to discuss the medical condition issue and set in motion appropriate action to determine the issue. We assume that this meeting took place, and now enter a written follow-up order on the matter.

### ORDER

The Attorney General, on behalf of Plaintiff, is ordered to oversee a complete and thorough investigation into Defendant's present medical condition and needs for medical attention and treatment in order to properly determine whether or not Plaintiff, which now has custodial jurisdiction over Defendant and is obligated to provide Defendant with proper medical care, must arrange to provide Defendant with necessary medical care outside of the Territory of American Samoa.

The Attorney General shall immediately apprise the Governor of the present situation and the Court's order. The Attorney General shall submit to the Governor, Commissioner of Public

CR No. 10-03   FOLLOW-UP ORDER ON
               DEFENDANT'S MEDICAL
               CONDITION

2

Safety, Warden of the Correctional Facility, and this Court a written report of the investigation results, which shall include his recommendations on the proper course of action to resolve this matter.

It is so ordered.

Dated: July 13, 2007

LYLE L. RICHMOND
Associate Justice

SAGAPOLUTELE MALAEOLA A.A.
Associate Judge

# Eric A. Seitz, Attorney At Law
A LAW CORPORATION

Eric A. Seitz
Lawrence I. Kawasaki
Ronald N. W. Kim

July 14, 2007

Via Facsimile to (684) 633-1869

Terry Lovelace, Esquire
General Counsel
LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa  96799

Re:     Richard Majhor

Dear Terry:

I understand from Drew Stave that he already has provided you with a copy of Dr. Saleapaga's June 13, 2007 letter concerning our client, Richard Majhor.  Since that letter was written and provided to the government Mr. Majhor has repeatedly been seen at the hospital, and I am informed that he required emergency treatment twice this week for serious falls and loss of consciousness.   I believe that Dr. Saleapaga's letter together with the most recent medical records should create a sufficient basis for the hospital to refer Mr. Majhor to the committee that authorizes off-island care without any additional formal request.  In the event that another letter or form is required I understand that Dr. Saleapaga is ready and willing to provide that along with other physicians at LBJ who are familiar with Mr. Majhor's health issues.

I am becoming increasingly concerned that if Mr. Majhor does not immediately receive the procedures that have been recommended for him the consequences will be very serious.  Accordingly I request your assistance in expediting this matter so that we can make arrangements next week to have Mr. Majhor transferred to a suitable medical facility.  Please stay in touch with both Drew and me about this matter and let us know what additional information and/or assistance we can provide.  Thank you.

Sincerely yours,

Eric A. Seitz

**EXHIBIT D**

# Eric A. Seitz, Attorney At Law

A LAW CORPORATION

Eric A. Seitz
Lawrence I. Kawasaki
Ronald N. W. Kim

July 23, 2007

Via Facsimile to (684) 633-1869

Terry Lovelace, Esquire
General Counsel
LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa  96799

Re:    Richard Majhor

Dear Terry:

I understand from Drew Stave that Dr. Saleapaga is away from American Samoa and is not scheduled to return until September.  We cannot wait that long for him or some other doctor to determine if Richard requires off island care.  Please arrange to have Richard seen by another doctor immediately or, in the alternative, forward Dr. Saleapaga's June 13th letter to the referral committee as the basis of a request for off island care.

If this matter cannot be resolved by the end of this week I will have no alternative but to file a lawsuit in Washington, D.C. seeking appropriate injunctive relief, damages, and reimbursement of our fees and costs.  In that event I will have to include medical malpractice claims against the hospital based upon its failure to take any steps to act on the recommendations of its staff physician as contained in the June 13th letter.

Please respond immediately.

Sincerely yours,

Eric A. Seitz

EXHIBIT E



# LBJ Tropical Medical Center

P.O. Box LBJ

Pago Pago, American Samoa 96799



*Commitment to Healthcare*
*Excellence*

July 24, 2007

Eric A. Seitz, Esq.
VIA FACSIMILE
808/545-3608

Re:    Richard Majhor

Dear Mr. Seitz:

I'm in receipt of your fax dated July 23, 2007. First, the Health Insurance Portability and Accountability Act of 1996 prevents me from discussing particulars of Mr. Majhor's medical history, even with his attorney of record, absent a signed Medical Release Authorization.

As previously stated, I can however, discuss LBJ Tropical Medical Center's Policy and Procedure for off-Island referrals. Your correspondence demands that I immediately arrange for another treating physician to see Mr. Majhor in Dr. Saleapaga's absence. This is far outside the scope of authority. I am not a physician. Please note that Dr. Saleapaga's letter of June 13, 2007 was not addressed to the off-Island Referral Committee.

I am happy to accept service of process on behalf of LBJ Tropical Medical Center.

Kindest regards,

TL/dbm

Terry Lovelace
General Counsel
LBJ Tropical Medical Center

**EXHIBIT F**

# Eric A. Seitz, Attorney At Law

A LAW CORPORATION

Eric A. Seitz
Lawrence I. Kawasaki
Ronald N. W. Kim

July 27, 2007

Via Facsimile to (684) 633-2269

Honorable Togiola T. Tulafono
Governor of American Samoa
3rd Floor, Executive Office Building
Utulei, American Samoa  96799

Re:    Richard Majhor

Dear Governor Tulafono:

As you know we represent Richard Majhor in connection with pending appeals from a murder conviction during which time he is incarcerated in American Samoa in the custody of the Department of Public Safety.  In early 2006 Mr. Majhor repeatedly experienced difficulties and delays when he sought medical treatment at the confinement facility.  His records will document that many appointments were made for him at LBJ Hospital and then cancelled because he was not transported.  Additionally I am informed that Mr. Majhor was not provided medications prescribed for him by his physicians and/or the prescriptions were not promptly refilled when they ran out.  Over the course of several months we addressed those matters with the Department of Public Safety, the Attorney General's Office, and eventually with the High Court and were assured that Mr. Majhor's medical needs would be met in a professional and timely manner.

Earlier this year Mr. Majhor reported several incidents at the confinement facility in which he lost consciousness for varying periods of time and sustained injuries when he fell.  In approximately March, 2007, I was informed that Dr. Iotamo Saleapaga had recommended that Mr. Majhor be transported off island to a suitable medical facility for medical tests and procedures that are not available and cannot be provided in American Samoa.  We immediately informed the Attorney General's office of our concerns that Mr. Majhor required medical care that he could not receive in American Samoa and, in the meantime, we requested that Dr. Saleapaga confirm his recommendations in writing.

For reasons that I still do not understand, we did not receive Dr. Saleapaga's enclosed letter until June 13, 2007, at which time a copy of the letter was delivered immediately to the Office of the Attorney General.  Unfortunately, from March to and until late June, 2007, the Attorney General and his staff failed to respond to any of our e-mails, calls, or other communications and took no actions with respect to Mr. Majhor's medical needs.  Accordingly on June 26, 2007, in anticipation of my upcoming trip to American Samoa to argue Mr. Majhor's

EXHIBIT  G

Governor Togiola T. Tulafono
July 27, 2007

appeal, I filed and served a motion in which we requested that the High Court set bail for Mr. Majhor to enable him to obtain appropriate medical treatment at his own expense. Your Attorney General opposed the motion in writing and offered no other alternative to obtain the medical care that had been recommended weeks and months earlier.

On July 12, 2007, I appeared before Judge Richmond for a hearing on the emergency motion to release Mr. Majhor on bail at which time the Government of American Samoa was represented by Deputy Attorney General Mark Hales. Although Judge Richmond expressed some doubt as to his jurisdiction, in light of the fact that Mr. Majhor's case currently is on appeal, the Court nevertheless issued an Order directing the Attorney General to "oversee a complete and thorough investigation into [Mr. Majhor's] medical condition and needs for medical attention and treatment in order to properly determine [the care he requires including care] outside of the Territory of American Samoa." Judge Richmond also specifically directed the Attorney General to apprise you of the situation and of the Court's Order, which also is enclosed.

Following the hearing on July 12, 2007, I met with Attorney General Ripley and two of his deputies at which time I believed they understood the urgency of the situation and committed to following through with Judge Richmond's directive to them. Subsequently I also was in repeated contact with Terry Lovelace, General Counsel of LBJ Hospital, who also assured me that the hospital and its staff would take the necessary steps to have Mr. Majhor's medical needs evaluated and bring his case to the attention of the hospital committee that apparently is vested with authority to direct off island care.

Two weeks later Mr. Majhor is still waiting for the medical treatment he should have received months earlier, and Mr. Hales and Mr. Lovelace have, to my knowledge, failed and/or refused to take any steps to resolve the situation. Mr. Lovelace's last comment to me was that I should sue him.

Unfortunately a civil legal action in the United States District Court in Washington, D.C., now appears to be the most effective means through which we can obtain the medical treatment and care that Mr. Majhor so urgently requires. In that event we will seek not only injunctive relief but also general and punitive damages for the violations of Mr. Majhor's constitutional rights. Please see Estelle v. Gamble, 429 U.S. 97 (1976) (holding that the deliberate indifference to the serious medical needs of prisoners constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution). Because I am informed that medical decisions in American Samoa may be made due to financial and funding considerations we may also be compelled to broaden any litigation to address those issues as well. See, e.g., Benter v. Peck, 825 F. Supp. 1411, 1417 (S.D. Iowa 1993) (deliberate indifference is established if necessary medical treatment is delayed for non-medical reasons); Revere v. Massachusetts Gen. Hospital, 463 U.S. 239, 245 ((1983) (government must pay for medical care that it has a constitutional duty to provide); and Harris v. Thigpen, 941 F.2d 1495, 1509 (11th Cir. 1991) (lack of funds allocated for prisons by the state legislature will not excuse the failure of corrections systems to maintain a certain minimum level of medical services necessary to avoid the imposition of cruel and unusual punishment).

Governor Togiola T. Tulafono
July 27, 2007

I remain hopeful that costly and embarrassing litigation will not be necessary to obtain proper medical evaluations and treatment for Richard Majhor, but the time is running out, and I will need to act in this matter early next week. Until then I am available to discuss this matter further with you or any of your designated representatives.

Sincerely yours,

Eric A. Seitz

enclosures (3)

cc      Office of the Attorney General
        Toetasi Fue Tuiteleleapaga, Esq.
        Marcellus Tala Uiagalelei, Esq.



**LBJ Tropical Medical Center**

P.O. Box LBJ
Pago Pago, American Samoa 96799

Internal Medicine Services

June 13, 2007

TO WHOM IT MAY CONCERN:

Re:   Richard Majhor
      DOB: 6/16/71
      SSN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
      LBJ Hosp#17-58-28

Mr. Richard is a 36 year-old male with a known history of chronic neck pain syndrome with headache and dizziness and recurrent syncopal episode. Chart review revealed he was initially seen at LBJ Medical Center in American Samoa on 7/25/01 for chronic neck pain syndrome associated with headaches and dizziness. He stated he was involved in a motor vehicle accident when he was 17 years old. Since then he had been followed up in the medical clinic and emergency room for the same problem till now. On 2003 July 3 he developed Insomnia. On 2/22/07 he presented to the emergency room for fainting at the Tafuna Correctional Facility. According to the medical record review he was seen in the emergency room and medical clinic 9 times for syncopal episode. He was last seen on 6/5/07. At the same time has pain neck associated with severe headaches.

Since 7/25/01, he had been on Tylenol#3, Vicodin, Percocet, Demerol and Xanax. Had been on anti-inflammatory Naprosyn 375 mg bid. His CT Scan of neck revealed some evidence of old injury. CT Scan of brain was negative for any space occupying lesion. His EKG was negative for cardiac arrhythmia or any acute changes. His chemistry and complete blood count normal. His physical exam today 6/13/07 is unremarkable except tenderness of posterior neck with limited full range of motion due to pain. Neurologically he is intact.

**IMPRESSION:**
   (1)   Recurrent syncopal episode etiology unknown.
   (2)   Chronic neck pain syndrome with headaches and dizziness status post neck injury.

Page –2-

This patient needs neurology evaluation to include EEG, MRI and may be Angiograthy. He also needs cardiology evaluation which may include Echocardiogram, Holter monitor and may be cardiac catherization. These special procedures are not available at LBJ Medical Center, American Samoa but off-island.

Sincerely,

IOTAMO T. SALEAPAGA, M.D.

$u08$

IN THE HIGH COURT OF AMERICAN SAMOA

TRIAL DIVISION

| | |
|---|---|
| AMERICAN SAMOA GOVERNMENT, | ) CR No. 10-03 |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) FOLLOW-UP ORDER ON |
| | ) DEFENDANT'S MEDICAL |
| RICHARD P. MAJHOR, | ) CONDITION DETERMINATION |
| | ) |
| Defendant. | ) |
| | ) |

Before RICHMOND, Associate Justice, and SAGAPOLUTELE, Associate Judge.

Counsel:   For Plaintiff, Mark R. Hales, Assistant Attorney
           General
           For Defendant, Eric A. Seitz, *Pro Hac Vice,* and Andrew
           T. Stave

On February 16, 2006, the jury found Defendant guilty of four crimes: murder in the first degree (Count I), felonious restraint (Count II), tampering with physical evidence (Count III), and property damage in the first degree (Count IV). On May 18, 2006, the Court adjudicated Defendant guilty of the four offenses, and sentenced Defendant to terms of life imprisonment on Count I and seven years imprisonment on Count II, concurrently with each other, and terms of five years imprisonment on Count III and five years imprisonment on Count IV, concurrently with each other and consecutively to the Count I and Count II terms. Defendant is presently serving his sentence as a prisoner at Plaintiff's Correctional Facility.

On July 12, 2007, the Court heard Defendant's motion concerning his current medical condition. Specifically, Defendant asked the Court to grant his request for emergency medical release to receive treatment in California for what he states is a "serious" medical condition. Defendant, his counsel, and Plaintiff's counsel were present. The Court ordered the Attorney General to meet with counsel Eric A. Seitz before Seitz departed the territory on the same date, July 12, 2003, to discuss the medical condition issue and set in motion appropriate action to determine the issue. We assume that this meeting took place, and now enter a written follow-up order on the matter.

ORDER

The Attorney General, on behalf of Plaintiff, is ordered to oversee a complete and thorough investigation into Defendant's present medical condition and needs for medical attention and treatment in order to properly determine whether or not Plaintiff, which now has custodial jurisdiction over Defendant and is obligated to provide Defendant with proper medical care, must arrange to provide Defendant with necessary medical care outside of the Territory of American Samoa.

The Attorney General shall immediately apprise the Governor of the present situation and the Court's order. The Attorney General shall submit to the Governor, Commissioner of Public

Safety, Warden of the Correctional Facility, and this Court a
written report of the investigation results, which shall include
his recommendations on the proper course of action to resolve
this matter.

It is so ordered.

Dated: _July 13, 2007_

LYLE L. RICHMOND
Associate Justice

SAGAPOLUTELE MALAEOLA A.A.
Associate Judge



**Commitment to Healthcare Excellence**

# LBJ Tropical Medical Center
## P.O. Box LBJ
### Pago Pago, American Samoa 96799



July 24, 2007

Eric A. Seitz, Esq.
VIA FACSIMILE
808/545-3608

　　　　Re:　Richard Majhor

Dear Mr. Seitz:

　　　　I'm in receipt of your fax dated July 23, 2007. First, the Health Insurance Portability and Accountability Act of 1996 prevents me from discussing particulars of Mr. Majhor's medical history, even with his attorney of record, absent a signed Medical Release Authorization.

　　　　As previously stated, I can however, discuss LBJ Tropical Medical Center's Policy and Procedure for off-Island referrals. Your correspondence demands that I immediately arrange for another treating physician to see Mr. Majhor in Dr. Saleapaga's absence. This is far outside the scope of authority. I am not a physician. Please note that Dr. Saleapaga's letter of June 13, 2007 was not addressed to the off-Island Referral Committee.

　　　　I am happy to accept service of process on behalf of LBJ Tropical Medical Center.

Kindest regards,

TL/dbm

Terry Lovelace
General Counsel
LBJ Tropical Medical Center

# Eric A. Seitz, Attorney At Law
A LAW CORPORATION

Eric A. Seitz
Lawrence I. Kawasaki
Ronald N. W. Kim

July 27, 2007

Via Facsimile to (684) 633-2054 to Jane Neru

Dr. Annie Fuavai
Chair .
Off island Referral Committee
LBJ Tropical medical Center
P.O. Box LBJ
Pago Pago, American Samoa  96799

Re:    Richard Majhor

Dear Dr. Fuavai:

　　　　　We represent Richard Majhor, and I am writing to you in your capacity as Chair of the LBJ Off Island Referral Committee. Enclosed herewith is a copy of a letter dated June 13, 2007, in which Dr. Iotamo Saleapaga recommended that Mr. Majhor undergo specified medical tests and procedures which can only be provided to him at a suitable medical facility in Hawaii or on the mainland United States. I request that your committee consider this matter on an expedited basis and advise me immediately of any actions that are taken pertaining to Mr. Majhor. Please contact me if you require any additional information or documentation.

　　　　　Thank you for your prompt attention to this matter.

　　　　　　　　　　　　　Sincerely yours,

　　　　　　　　　　　　　Eric A. Seitz

enclosure

EXHIBIT  H



# LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa 96799

## Internal Medicine Services

*amitment to Healthcare
Excellence*

June 13, 2007

TO WHOM IT MAY CONCERN:

Re:   Richard Majhor
      DOB: 6/16/71
      SSN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
      LBJ Hosp#17-58-28

Mr. Richard is a 36 year-old male with a known history of chronic neck pain syndrome with headache and dizziness and recurrent syncopal episode. Chart review revealed he was initially seen at LBJ Medical Center in American Samoa on 7/25/01 for chronic neck pain syndrome associated with headaches and dizziness. He stated he was involved in a motor vehicle accident when he was 17 years old. Since then he had been followed up in the medical clinic and emergency room for the same problem till now. On 2003 July 3 he developed Insomnia. On 2/22/07 he presented to the emergency room for fainting at the Tafuna Correctional Facility. According to the medical record review he was seen in the emergency room and medical clinic 9 times for syncopal episode. He was last seen on 6/5/07. At the same time has pain neck associated with severe headaches.

Since 7/25/01, he had been on Tylenol#3, Vicodin, Percocet, Demerol and Xanax. Had been on anti-inflammatory Naprosyn 375 mg bid. His CT Scan of neck revealed some evidence of old injury. CT Scan of brain was negative for any space occupying lesion. His EKG was negative for cardiac arrhythmia or any acute changes. His chemistry and complete blood count normal. His physical exam today 6/13/07 is unremarkable except tenderness of posterior neck with limited full range of motion due to pain. Neurologically he is intact.

## IMPRESSION:
  (1)   Recurrent syncopal episode etiology unknown.
  (2)   Chronic neck pain syndrome with headaches and dizziness status post neck injury.

---

Page –2–


This patient needs neurology evaluation to include EEG, MRI and may be Angiograthy.   He also needs cardiology evaluation which may include Echocardiogram, Holter monitor and may be cardiac catherization.  These special procedures are not available at LBJ Medical Center, American Samoa but off-island.


Sincerely,


IOTAMO T. SALEAPAGA, M.D.

/pl

1  8/15/07
2
3  LBJ off–island program over budget by $2M
4
5  by Fili Sagapolutele
6  Samoa News Correspondent
7
8  The LBJ Medical Center estimates an over budget for fiscal year 2007 due
9  to the increase in off–island medical referral program expenses, according
10  to the hospital's third quarter report submitted to the Fono last month.
11
12  The report, provided by chief financial officer and acting chief executive
13  officer Patricia Tindall, was sent to the Fono, Governor Togiola and LBJ
14  board chairman Charles Warren.
15
16  According to the report, LBJ met with the governor in April to discuss
17  closing the program, which is estimated to be over budget for the year by
18  over $2 million but "the governor asked to keep the program open, and
19  will ask for a special Fono appropriation to cover the over budget for off
20  island expenditure."
21
22  Responding to Samoa News inquiries, Tindall said LBJ "requested an
23  approximate appropriation of $3,000,000 to keep the program open for
24  the remainder of the fiscal year."
25
26  She said the $2 million budget for the program is completely spent.
27
28  "At that time we are also committed to look for more cost effective
29  alternatives, and ways to lessen the financial burden of this program," she
30  explained. "We have been very carefully screening the applicants for the
31  program, and have looked for the best, and most cost effective ways to
32  provide the care needed."
33
34  To date, LBJ has sent 104 patients off island for care and this does not
35  include Shriner's patients that LBJ facilitate to Hawaii, said Tindall, adding
36  that LBJ has sent Medicare eligible patients to Hawaii, and the bulk of the
37  patients to New Zealand.
38
39  LBJ have had to use its Hawaii third–party administrator only 12 times this
40  year, she added.
41

EXHIBIT I

Tindall said LBJ currently has 10 patients in New Zealand receiving treatments and an additional 12 patients approved to go to New Zealand, and three approved to go to Hawaii.

"We estimate an additional $1.655 million is necessary to pay for treatments for these patients currently in New Zealand, as well as the approved patients we have currently on the list," she said. "Given the current rate of spending, we can extrapolate another $1.04 million in spending for the last quarter of the fiscal year. This is a total of $2.69 million – we originally asked for an appropriation of approximately $3 million."

Tindall also revealed that LBJ had two air ambulance cases (for the current fiscal year), one had to be referred to New Zealand because LBJ did not find any hospital/specialist willing to take the patient in Hawaii.

"We often have problems finding hospital space, or specialists willing to take our patients. New Zealand is much more flexible," she explained. "This particular patient had to have oxygen, and the small planes that fly to Apia (where the patients transfer to New Zealand) do not have the capacity for oxygen or a stretcher case. In this case, the only option was to air ambulance to New Zealand."

She said the second patient was ready to go to Hawaii, however, Hawaiian Airlines could not accept the medical emergency as they were already overbooked.

"Our off island coordinator did a great job of finding a referral hospital and specialist in New Zealand and the patient was on the way to New Zealand the same day (Sunday)," she said.

Tindall said the New Zealand and LBJ third party administrator there are more flexible and seem to better accommodate an emergency. She noted that our New Zealand patients are all very pleased with the New Zealand service and medical outcomes.

"Our off-island patients are often very complicated, with multiple co-morbidities," Tindall said. "Many Samoans wait till the very last minute to seek medical attention, and therefore we have to look for multiple specialists, and a hospital to accommodate these complex patients."

1   She said in order to alleviate the need for the off island referrals, LBJ has
2   recently signed another nephrologist (Dr. Chekuri) and cardiologist on a
3   rotating contract.
4
5   "We are hopeful that LBJ programs run in conjunction with these two
6   specialists will diagnose disease earlier, and give patients more
7   information, preventative prescriptions, and a chance for medical
8   maintenance programs that keep true emergent care at bay," she said.
9
10  She added that both of these specialists have suggested equipment LBJ
11  can use here for better diagnostic tools "and we will focus on training our
12  clinical staff to enable them to do these tests year round, and use the
13  specialists as consultants."
14
15  Dr. Chekuri visited patients at LBJ from Aug. 6-11. Tindall said Dr.
16  Chekuri consulted on quite a few patients, only one of which had to be
17  referred to the off island program.
18
19  Reach the reporter at fili@samoanews.com.
20

# YAHOO! MAIL

**From:** Rpmrem@aol.com

**Date:** Sun, 5 Aug 2007 18:06:17 EDT

**Subject:** (no subject)

**To:** eseitzatty@yahoo.com

Dear Eric,

Today Richard called me. Here's what he said:

He was taken to the hospital on Tuesday, July 31, 2007 via police car. When he arrived, Lynn Taylor, a nurse practitioner told him that she no longer could give him any narcotic pain medication because the DEA would not allow it. This order was given by a woman who is the acting CEO for LBJ hospital. He overheard it said by the same woman (acting CEO) that the hospital didn't have money to treat Richard.

On Thursday, August 02, 2007, Richard was taken to LBJ ER via ambulance. When he arrived, the receiving ER personnel said that handcuffs had to be put on him. This order was given by the acting CEO of LBJ. Again, he was told that only non-narcotic pain medication would be given to him because the DEA would not allow it and that LBJ could not afford to pay for him. This was witnessed by officer Veelee (phonetic spelling, don't know the spelling of this officer's name). Richard told the ER personnel that it hurt when he took a deep breath or coughed it hurt.

Another time when he was taken to LBJ ER, the receiving doctor told Richard that he wanted to put a Holter monitor on him, but wasn't sure if the prison officials would allow it.

Richard told me that about two weeks ago, it was ordered that regardless of what condition he arrives in the LBJ ER, he is to have handcuffs on. Richard told me that the officers have no problem transporting him w/o handcuffs, but that this request was made and ordered by the acting CEO of LBJ who is a woman. Richard doesn't remember her name, but will give it to me when he calls me on Monday.

I would like to know how the hell a non-medical staff person can order that someone who is brought in by ambulance have handcuffs put on them while in the ER. The ambulance personnel as well as the prison official that accompanies him to the LBJ ER does not see a need to use handcuffs, yet an LBJ administrator orders it. She is taking it upon herself to jeopardize his care and further compromise his safety.

Richard told me that he has overheard prison personnel talking about how there's no money for his care; he has also overhead LBJ personnel saying the same.

I am relaying this information to you for Richard. I sent him $200.00 today. He says he's hungry.

Richard told me that few weeks ago, a nurse practitioner became angry and aggressive with him. Richard told me that he did not do anything to warrant her behavior towards him. Looks to me like they're trying to set him up and make him out to be dangerous, etc. All this seems a bit consistent with what you sent me the other day re: conversation with this same acting CEO.

I have never heard of a non-medical person issuing orders in an ER for a patient's care. This acting CEO is acting in a vindictive and aggressive manner toward my son and further compromising his already deficient care. I personally blame her right now for my son not getting the right care.

Both my sons and I get migraines that cannot be controlled by OTC anything. I personally have gone to the ER for migraines. The treating physician determined that only narcotic meds could stop the horrible pain. I never asked for anything, it was their determination. I am telling you this because of the way Richard has been treated. They are adding to his physical suffering and complicating it with mental anguish.

Vicki

---

Get a sneak peek of the all-new AOL.com.

## EXHIBIT  J

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD MAJHOR,<br>Address:<br>　　Tafuna Corr. Facility<br>　　P.O. Box 1011<br>　　Pago Pago, Am. Samoa  96799 | ) Civil Action  No. 07-1465 (RBW)<br>)<br>)<br>)<br>) AFFIDAVIT OF IRWIN J.<br>) SCHATZ, M.D. |
| 　　　　　　　　Petitioner, | )<br>) |
| 　　　vs. | )<br>) |
| DRIK KEMPTHORNE, Secretary of the<br>Department of Interior, et al, | )<br>)<br>) |
| 　　　　　Respondents. | )<br>) |

AFFIDAVIT OF IRWIN J. SCHATZ, M.D.

| | |
|---|---|
| STATE OF HAWAII | ) |
| | ) SS. |
| CITY AND COUNTY OF HONOLULU | ) |

IRWIN J. SCHATZ, M.D., being first duly sworn on oath, deposes and says:

(1)  I am a physician licensed to practice in the State of Hawaii and board certified in the specialized medical field of cardio-vascular disease.

(2)   I also serve as a Professor of Medicine at the John A. Burns School of Medicine of the University of Hawaii.



(3)    I have reviewed a letter dated June 13, 2007, by Iotamo T. Saleapaga, M.D., pertaining to a patient named Richard Majhor.

(4)    I have not met or examined Mr. Majhor, nor have I ever met or spoken to Dr. Saleapaga.

(5)    Based upon Mr. Majhor's brief history and the symptoms described in Dr. Saleapaga's letter I concur with Dr. Saleapaga's recommendations that Mr. Majhor requires neurology and cardiology evaluations including a detailed medical history and the enumerated tests and procedures.

(6) Because of the reported frequency and seriousness of Mr. Mahjor's syncopal episodes it is my professional opinion that the recommendations of Dr. Saleapaga should be followed immediately.

(7) If I were a consulting physician to whom Dr. Saleapaga's letter was addressed I would immediately schedule the patient for the recommended evaluations and tests due to the seriousness of Mr. Majhor's reported symptoms and the urgency to diagnose and treat and/or rule out potentially life threatening conditions.

IRWIN J. SCHATZ

2

Subscribed and sworn to before me

this ___30^th___ day of August, 2007.

_____
Notary Public, State of Hawaii
My commission expires: Jan. 4, 2008

3

Chief Justice Roberts suffers seizure - Yahoo! News    Page 1 or 5

Case 1:07-cv-01465-RBW    Document 11-15    Filed 08/30/2007    Page 1 of 2

Yahoo! | My Yahoo! | Mail | More                      New User? Sign Up  **Sign In** | Help

# YAHOO! NEWS

Search: [                    ] [Web Search]

**Home**  **U.S.**  **Business**  **World**  **Entertainment**  **Sports**  **Tech**  **Politics**  **Elections**  **Science**  **Health**  **Most Popular**

Politics Video  Elections  White House  Congress  U.S. Government  World  Supreme Court  Press Releases

Search:                    All News [    ] [Search] Advanced

## Chief Justice Roberts suffers seizure

**AP** Associated Press

**RELATED VIDEO**



**Chief Justice Roberts suffers seizure**
AP

» All news video



AP Photo: Supreme Court Chief Justice John Roberts smiles as he is introduced before speaking to students...

Slideshow: U.S. Supreme Court



**ELSEWHERE ON THE WEB**

**CNN.com:** FBI, IRS agents raid U.S. senator's home

**ABC News:** For a Taste of Fame, Be a Celebrity Personal Assistant

**USATODAY.com:** Bush, Brown tout common ground

By MARK SHERMAN, Associated Press Writer

48 minutes ago

WASHINGTON - Chief Justice John Roberts suffered a seizure at his summer home in Maine on Monday, causing a fall that resulted in minor scrapes, Supreme Court spokeswoman Kathy Arberg said.

He will remain in a hospital in Maine overnight.

"It's my understanding he's fully recovered, said Christopher Burke, a spokesman for Penobscot Bay Medical Center, where Roberts was taken.

Roberts, 52, was taken by ambulance to the medical center, where he underwent a "thorough neurological evaluation, which revealed no cause for concern," Arberg said in a statement.

Roberts had a similar episode in 1993, she said.

ADVERTISEMENT



THIS IS MY HAPPY HOUR

Remember what your friends look like?
→ Invite a friend for a game of tennis.

usta.com          IT'S YOUR GAME.

Doctors called Monday's incident "a benign idiopathic seizure," Arberg said. The White House described the January 1993 episode as an "isolated, idiosyncratic seizure."

A benign seizure means that doctors performed an MRI and other tests to conclude there was no tumor, stroke or other explanation.

In addition, doctors would have quickly ruled out simple explanations such as dehydration or low blood sugar.

By definition, someone who has had more than one seizure without any other cause is determined to have epilepsy, said Dr. Marc Schlosberg, a neurologist at Washington Hospital Center, who is not involved in the Roberts' case.

Whether Roberts will need anti-seizure medications to prevent another is something he and his doctor will have to decide.

But after two seizures, the likelihood of another at some point is greater than 60 percent.

"When it's going to occur, obviously nobody knows," Schlosberg said.

The incident occurred around 2 p.m. EDT on a dock near the home in Port Clyde on Maine's Hupper Island. Port Clyde, which is part of the town of St. George, is about 90 miles by car northeast of Portland, midway up the coast of Maine.

Roberts was taken by private boat to the mainland and then transferred to an ambulance, St. George Fire Chief Tim Polky said.

ADVERTISEMENT



EXHIBIT L



**SEND US YOUR PHOTOS!**



**Campaign trail**
Following the presidential campaign? Submit pictures of candidates, supporters, and events to You Witness News.

**FEATURED IN YAHOO! NEWS**

CQPolitics.com

Election coverage and analysis from Congressional Quarterly.
» More from Congressional Quarterly

**NEWS ALERTS**

Get an alert when there are new stories about:

☐ Portland, Maine
☐ Sandra Day O\x27Connor
☐ William Rehnquist
☐ John Paul Stevens
☐ Chief Justice John Roberts

[ Add Selected Alerts ]

» More alerts

"He was conscious and alert when they put him in the rescue (vehicle)," Polky said.

Named to the court by President Bush in 2005, Roberts is the youngest justice on a court in which the senior member, John Paul Stevens, is 87. Bush was informed of the hospitalization by his chief of staff, Josh Bolten, the White House said.

Roberts is the father of two young children.

Larry Robbins, a Washington attorney who worked with Roberts at the Justice Department in 1993, said he drove Roberts to work for several months after the incident. Robbins said Roberts never mentioned what the problem was and he never heard of it happening again.

In 2001, Roberts described his health as "excellent," according to Senate Judiciary Committee records.

Roberts became chief justice after the death of William Rehnquist in September 2005, although Bush had first chosen him to take Sandra Day O'Connor's seat when she announced her retirement earlier that year.

He had served as an appellate judge in Washington and spent more than a decade before that as a lawyer at the Hogan and Hartson law firm, where he specialized in arguing cases before the Supreme Court.

Roberts also served in the Reagan and Bush administrations in the 1980s and '90s. He was a clerk for Rehnquist after graduating from Harvard Law School.

Roberts spent a couple of weeks in Europe in July, teaching a course in Vienna and attending a conference in Paris. He was at the court in Washington late last week.

———

Associated Press writer David Sharp in Portland, Maine, contributed to this story.

———

On the Net:

Supreme Court: http://www.supremecourtus.gov

**Email Story     IM Story     Printable View**

**RECOMMEND THIS STORY**

Recommend It:          Average (708 votes)
                       ★★★☆☆     » Recommended Stories

## Full Coverage: Supreme Court

**OFF THE WIRES**

US supreme court chief suffers seizure, fall
AFP, 6 minutes ago

Chief Justice Roberts suffers seizure AP, 18 minutes ago

**NEWS STORIES**

Supreme Court Chief Taken to Hospital After Fall 🔳 at The Washington Post (reg. req'd), Jul 30

Top Court Orders EPA to Reconsider Regulating Emissions 🔳 at The Washington Post (reg. req'd), Apr 02

**FEATURE ARTICLES**

Supreme Court tilt to right had its limits  The Christian Science Monitor via Yahoo! News, Jul 02

Justices Continue Trend of Hearing Fewer Cases 🔳 at The Washington Post (reg. req'd), Jan 07

**OPINION & EDITORIALS**

How to judge the Roberts Supreme Court The Christian Science Monitor via Yahoo! News, Jul 06

Five to Four 🔳 at The New Yorker, Jun 19

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD MAJHOR,<br>Address:<br>     Tafuna Corr. Facility<br>     P.O. Box 1011<br>     Pago Pago, Am. Samoa  96799 | ) CIVIL NO.  07-1465 (RBW)<br>)<br>)<br>)  PROPOSED ORDER<br>)  GRANTING PLAINTIFF'S<br>)  RENEWED MOTION FOR |
|           Plaintiff, | )  PRELIMINARY INJUNCTION<br>) |
| vs. | )<br>) |
| DIRK KEMPTHORNE, Secretary of  the<br>United States Department of Interior;<br>TOGIOLA T. TULAFONO, Governor of<br>American Samoa; FEPULEA`I AFA<br>RIPLEY, JR., Attorney General;<br>MARK R. HALES, Assistant Attorney<br>General; SOTOA M. SAVALI, Director of<br>Department of Public Safety; FUEGA<br>SAITE MOLIGA, Warden of Territorial<br>Correctional Facility;  LBJ TROPICAL<br>MEDICAL CENTER, An American Samoa<br>Medical Center Authority;  CHARLES<br>WARREN, Chairman of the LBJ<br>Tropical Medical Center; PATRICIA<br>TINDALL, Acting CEO of the LBJ<br>Tropical Medical Center; ANNIE<br>FUAVAI, M.D., Chairperson of the LBJ<br>Tropical Medical Center Off Island Referral<br>Committee; TERRY LOVELACE, General<br>Counsel of LBJ Tropical Medical Center;<br>and JOHN DOES 1-50, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
|           Defendants. | )<br>)<br>) |

PROPOSED ORDER GRANTING PLAINTIFF'S
RENEWED MOTION FOR PRELIMINARY INJUNCTION

Plaintiff RICHARD MAJHOR having moved the Court for the

issuance of a preliminary injunction order enjoining the above-named Defendants

and their employees, agents, representatives, and successors in office from failing

to provide timely access to necessary and appropriate medical care and treatment,

in accordance with the Eighth Amendment of United States Constitution while

Plaintiff remains incarcerated at his current level of detention, and

The Court having determined that Plaintiff is likely to prevail on the

merits of his claims, is facing a serious risk of irreparable harm, and that the

balance of equities substantially favors the issuance of temporary injunctive relief

under the facts and circumstances presented in this case; and

Good cause appearing therefore;

IT IS HEREBY ORDERED that the Defendants and their employees,

agents, representatives, and/or successors in office shall be and hereby are

preliminarily enjoined from failing to provide Plaintiff with timely access to

necessary and appropriate medical care and treatment, in accordance with the

Eighth Amendment of United States Constitution, while Plaintiff remains

incarcerated at his current level of detention, whether in American Samoa or

elsewhere.

This Order shall be effective upon service upon counsel for the

Defendants.

DATED:  Washington, D.C., _____, 2007


_____
UNITED STATES DISTRICT JUDGE

<u>CERTIFICATE OF SERVICE</u>

I DO HEREBY CERTIFY that one copy of the within was duly served

this date via U.S. Mail, First-Class, Postage Prepaid addressed to the following:

DIRK KEMPTHORNE
Secretary of Interior
United States Department of Interior
1849 C Street, N.W.
Washington, D.C. 20240

TOGIOLA T. TULAFONO
Governor of American Samoa
3rd Floor, Executive Office Building, Utulei
Pago Pago, American Samoa  96799

FEPULEA`I AFA RIPLEY, JR.
Attorney General
Office of the Attorney General
American Samoa Government
Post Office Box 7
Pago Pago, American Samoa  96799

MARK R. HALES
Assistant Attorney General
Office of the Attorney General
American Samoa Government
Post Office Box 7
Pago Pago, American Samoa  96799

SOTOA M. SAVALI
Director of Department of Public Safety
American Samoa Government
Pago Pago, American Samoa  96799

FUEGA SAITE MOLIGA
Warden of Territorial Correctional Facility
American Samoa Government
Pago Pago, American Samoa  96799

LBJ TROPICAL MEDICAL CENTER
C/O Terry Lovelace, Esq.
An American Samoa Medical Center Authority
P.O. Box LBJ
Pago Pago, American Samoa  96799

CHARLES WARREN,
Chairman of the LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa  96799

PATRICIA TINDALL
Acting CEO of the LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa  96799

ANNIE FUAVAI, M.D.
Chairperson of the LBJ Tropical Medical Center Off
Island Referral Committee
P.O. Box LBJ
Pago Pago, American Samoa  96799

TERRY LOVELACE
General Counsel, LBJ Tropical Medical Center
P.O. Box LBJ
Pago Pago, American Samoa  96799

2

DATED:  Honolulu, Hawaii, August 30, 2007

/s/ Eric A. Seitz
ERIC A. SEITZ
D.C. Bar No. 363830
820 Mililani Street, Suite 714
Honolulu, Hawaii  96813
Telephone:   (808) 533-7434
Facsimile:    (808) 545-3608
E-mail: eseitzatty@yahoo.com

Attorney for Petitioner