MARK R. HALES
FEPULEA'I AFA RIPLEY, JR.
TOGIOLA T. TULAFONO
SOTA M. SAVALI
FUEGA SAITE MOLIGA
PO Box 7, Pago Pago
American Samoa, 96799
Telephone      684-633-4163
Facsimile      684-633-1838
Email markhales@gmail.com

DEFENDANTS IN PRO SE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD MAJHOR, | ) | CIVIL NO.  07-1465 (RBW) |
| | ) | |
| Address:  Tafuna Correctional Facility | ) | |
| PO Box 1011 | ) | |
| Pago Pago, American Samoa | ) | MOTION FOR SANACTIONS |
| 96799 | ) | PURSUANT TO RULE 11 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| DIRK KEMPTHORNE, Secretary of the | ) | |
| United States Department of Interior; | ) | |
| TOGIOLA T. TULAFONO, Governor of | ) | |
| American Samoa;  Fepulea'i Afa Ripley, Jr. | ) | |
| Attorney General; MARK HALES, | ) | |
| Assistant Attorney General, SOTOA M. | ) | |
| SAVALI, Director of Department of Public | ) | |
| Safety, fuega saite moliga, Warden of | ) | |
| Territorial Correctional Facility,  LBJ | ) | |
| TROPICAL MEDICAL CENTER, | ) | |
| CHARLES WARREN, Chairman of LBJ | ) | |
| Tropical Medical Center, PATRICIA | ) | |
| TINDALL, Acting CEO, ANNIE FUAVAI, | ) | |
| M.D., Chairperson of the LBJ Tropical Off- | ) | |
| Island Referral Committee, TERRY | ) | |
| LOVELACE, General Counsel of LBJ | ) | |
| Tropical Medical Center, and JOHN  DOES | ) | |
| 1-50, | ) | |
| | ) | |

Defendants.                )
_____)

## MOTION FOR SANCTIONS UNDER RULE 11 ON BEHALF OF DEFENDANTS MARK R. HALES; TOGIOLA T. TULAFONO; FEPULEA'I AFA RIPLEY, JR.; SOTOA M. SAVAILI, FUEGA SAITE MOLIGA

COMES NOW Defendant Mark R. Hales; Togiola T. Tulafono; Fepulea'i Afa Ripley, Jr.; Sotoa M. Savaili, Fuega Saite Moliga; for their Motion for Sanctions under Rule 11 assert as follows:

1.      The Defendants were sued as individuals.

2.      None of the above named Defendants acted in individual capacity in any interaction with Plaintiff.

3.      Plaintiff's counsel "threatened" Defendant Hales and Ripley with personal suit in Federal Court if Plaintiff did not receive the care demanded.

4.      Plaintiff has failed to state any basis to sue this Defendant personally. Defendant assert that this action was improper and taken to harass contrary to Rule 11(b)(1) of the Federal Rules of Civil Procedure.

5.      In Document 7 in the present action, the Second Affidavit of Eric Seitz, Plaintiff's counsel states "I am informed" that Plaintiff was denied treatment at LBJ Medical Center's Emergency Room on August 20, 2007 on orders of Terry Lovelace, and that Plaintiff "is unable to receive any medical care whatsoever in American Samoa." Plaintiff was seen at LBJ Tropical Medical Center on August 20, 2007. *See Attached Record of Treatment dated August 20, 2007.*

6.      Plaintiff's Counsel had a duty pursuant to Rule 11(a) to investigate and determine the veracity of statements received on information and belief.  He has a duty of reasonable inquiry under the circumstances.  Clearly, Eric Seitz made no inquiry. Eric

Seitz signed Plaintiff's Complaint, representing to the Court that he had complied with the Court Rule.  Here, Mr. Seitz is a bully with a law license using his position as an Officer of the Court to harass and intimidate those with whom his client has a controversy.  These Defendants will vigorously pursue this averment with the State Bar of Hawaii.

7.    Plaintiff's Counsel's naming of these Defendants as individuals to this lawsuit lacks merit and Defendants request that this Honorable Court, on its own initiative, pursuant to Rule 11(c)(1)(B), move for sanctions against Plaintiff's Counsel. In the alternative, Defendants move for sanctions under Rule 11(c)(1)(A).

8.    Plaintiff's Counsel acted with misconduct, fraud, and unfairness in seeking this injunction.

Dated:  _____

_____
Mark R. Hales
Assistant Attorney General
Defendant in Pro Se

Dated:  _____

_____
Fepulea'i Afa Ripley, Jr.
Attorney General
Defendant in Pro Se

Dated:  _____

_____
Togiola T. Tulafono
Governor of American Samoa
Defendant in Pro Se

Dated:  _____

_____
Sotoa M. Savaii
Director of Dept. of Public Safety
Defendant in Pro Se

Dated:  _____

_____
Fuega Saite Moliga
Warden T.C.F.
Defendant in Pro Se

Seitz signed Plaintiff's Complaint, representing to the Court that he had complied with the Court Rule. Here, Mr. Seitz is a bully with a law license using his position as an Officer of the Court to harass and intimidate those with whom his client has a controversy. These Defendants will vigorously pursue this averment with the State Bar of Hawaii.

7.    Plaintiff's Counsel's naming of these Defendants as individuals to this lawsuit lacks merit and Defendants request that this Honorable Court, on its own initiative, pursuant to Rule 11(c)(1)(B), move for sanctions against Plaintiff's Counsel. In the alternative, Defendants move for sanctions under Rule 11(c)(1)(A).

8.    Plaintiff's Counsel acted with misconduct, fraud, and unfairness in seeking this injunction.

Dated: ___9/25/07___

Mark R. Hales
Assistant Attorney General
Defendant in Pro Se

Dated: ___9/25/2007___

Fepulea'i Afa Ripley, Jr.
Attorney General
Defendant in Pro Se

Dated: ___9/25/07___

Togiola T. Tulafono
Governor of American Samoa
Defendant in Pro Se

Dated: ___9-25-07___

Sotoa M. Savaii
Director of Dept. of Public Safety
Defendant in Pro Se

Dated: ___09.25.07___

Fuega Saite Moliga
Warden T.C.F.
Defendant in Pro Se

Fuega Saite Moliga
Warden of Tafuna Correctional Facility
American Samoa Government
Pago Pago, American Samoa 96799

LBJ Tropical Medical Center
ATTN: Patricia Tindall, CEO
PO Box LBJ
Pago Pago, American Samoa 96799

Charles Warren,
Chairman ASMCA
PO Box LBJ
Pago Pago, American Samoa 96799

Patricia Tindall, CEO
LBJ Tropical Medical Center
PO Box LBJ
Pago Pago, American Samoa 96799

Dr. Annie Fuavai
Chairperson, LBJ OIRC
PO Box LBJ
Pago Pago, American Samoa 96799

Terry Lovelace, Esq
General Counsel
PO Box LBJ
Pago Pago, American Samoa 96799

Dated: 9/25/07

Mark R. Hales
Assistant Attorney General
Defendant in Pro Se

Dated: 9/25/2007

Fepulea'i Afa Ripley, Jr.
Attorney General
Defendant in Pro Se

Dated: 9/25/07

Togiola T. Tulafono
Governor of American Samoa
Defendant in Pro Se

Dated: 9-25-07

Sotoa M. Savaii
Director of Dept. of Public Safety
Defendant in Pro Se

Dated: 09.25.07

Fuega Saite Moliga
Warden of the Territorial
Correctional Facility
Defendant in Pro Se

MARK R. HALES
PO Box 7, Pago Pago
American Samoa, 96799
Telephone    684-633-4163
Facsimile    684-633-1838
Email markhales@gmail.com

DEFENDANT IN PRO SE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RICHARD MAJHOR, | CIVIL NO. 07-1465 (RBW) |
| Address: Tafuna Correctional Facility<br>PO Box 1011<br>Pago Pago, American Samoa<br>96799 | AFFIDAVIT OF MARK R. HALES |
| Plaintiff, | |
| vs. | |
| DIRK KEMPTHORNE, Secretary of the United States Department of Interior; TOGIOLA T. TULAFONO, Governor of American Samoa;  Fepulea'I Afa Ripley, Jr. Attorney General; MARK HALES, Assistant Attorney General, SOTOA M. SAVALI, Director of Department of Public Safety, fuega saite moliga, Warden of Territorial Correctional Facility,  LBJ TROPICAL MEDICAL CENTER, CHARLES WARREN, Chairman of LBJ Tropical Medical Center, PATRICIA TINDALL, Acting CEO, ANNIE FUAVAI, M.D., Chairperson of the LBJ Tropical Off-Island Referral Committee, TERRY LOVELACE, General Counsel of LBJ Tropical Medical Center, and JOHNDOES 1-50, | |
| Defendants. | |

```
_____
                                  )
TERRITORY OF AMERICAN SAMOA  )
                                  )
                                  )
COUNTY OF MAOPUTASI          )
_____)
```

MARK R. HALES, being first duly sworn on oath, deposes and says:

(1)     I have been an Assistant Attorney General for the American Samoa Government since April 21, 2006.

(2)     I was assigned to handle Richard Majhor's appeal on his murder conviction on February 8, 2007.

(3)     The first time that I was received any notice of the Plaintiff's medical concerns was on or about July 6, 2007, when I received a Motion for Emergency Release dated June 26, 2007, which included a letter by Dr. Saleapaga and addressed, "To Whom it May Concern" stating his medical diagnose of the Plaintiff.  At no time prior to that date had I been served with any document or received any phone calls or emails from Plaintiff's Attorneys Mr. Andrew Stave (hereinafter referred to as "Stave") and Mr. Eric Seitz (hereinafter referred to as "Seitz") as alleged by Plaintiff.  Emails had been given to Deputy Attorney General Frederick J. O'Brien from Stave, but I never received any notice of any medical condition as alleged by Plaintiff.

(4)     On or about July 12, 2007, I appeared in behalf of the ASG in the High Court of American Samoa opposing the conditions of Plaintiff's emergency release.   At that hearing, I declared to the High Court that the Plaintiff has failed to provide any

evidence of an emergency medical condition and that Saleapaga's letter is insufficient to require the American Samoa Government to pay for off island medical care.

(5)     On or about July 12, 2007, I appeared in behalf of the ASG in the High Court of American Samoa opposing the conditions of Plaintiff's emergency release.   At that hearing, I declared to the High Court that the Plaintiff has failed to provide any evidence of an emergency medical condition and that Saleapaga's letter is insufficient to require the American Samoa Government to pay for off island medical care.

(6)     On or about July 12, 2007, I also met with Stave and Seitz to and discussed the Plaintiff's medical condition and the procedure for off island care.  At that meeting I informed Seitz and Stave that in accordance with American Samoa Government and L.B.J. Tropical Medical Center polices and procedures that the letter from Dr. Saleapaga was insufficient evidence to prove a medical condition and government funded off island care.  I further explained that governmental payment of off-island care is decided by the Off Island Referral Committee, not the Attorney General's Office.  I further stated that the Plaintiff needed to apply to the Off Island Referral Committee, just like any other resident, if he wants off island medical care.  Seitz said if the Plaintiff could not receive approval from the Off Island Referral Committee within a few days of this meeting, he would have to file suit in federal court.

(7)     On or about July 13, 2007, the High Court of American Samoa ordered the American Samoa Government "to oversee a complete and thorough investigation into [Plaintiff's] present medical condition and needs for medical attention and treatment in order to properly determine whether or not [the American Samoa Government] . . . is

obligated to provide [Plaintiff] with proper medical care and must arrange to provide [Plaintiff] with necessary medical care outside the Territory of American Samoa."

(8)    On or about July 13, 2007, I discussed the matter with Attorney General Ripley and we decided that the American Samoa Government's investigation required Plaintiff to properly apply to the Off Island Referral Committee.

(9)    Since July 13, 2007, I have not received any communication or documents regarding the Plaintiff's efforts to seek medical assistance from the Off Island Referral Committee, only documents pertaining to this federal action.

(10)    From August 2, 2007, through August 3, 2007, I called the United States Attorney's Office in Hawaii. the Attorney General's Office of Hawaii, the Federal Bureau of Corrections, and Hawaii State Prison system seeking a potential host for the Plaintiff if he was granted off island care.

(11)    On or about August 10, 2007, I was told by the Attorney General Ripley that the State of Hawaii would host the Plaintiff for free, but would require payment for transportation to and from any hospital.

(12)    On or about August 10, 2007, I called Seitz and told him that Hawaii would incarcerate him for free if Plaintiff traveled Hawaii for medical care, but transportation costs to and from Hawaii, as well as to and from the hospital would not be covered by Hawaii.  I also told Seitz that if the Plaintiff was approved by the Off Island Referral, the American Samoa Government would pay for all those costs.  However, I also stated it if the Plaintiff was not approved, the Plaintiff would have to pay for all additional costs.  I also said if the Plaintiff wanted to pay for his off island care now, he could leave as soon as transportation arrangement could be made.  Seitz insisted that the

4

and insisted that the Government had to pay solely based off the letter from Dr. Saleapaga.

(13)     From July 13, 2007, through September 25, 2007, I communicated with Terry Lovelace, (hereafter referred to as "Lovelace"), General Counsel for L.B.J. numerous times regarding the Government's obligation regarding the Plaintiff's medical care.  On each occasion, Lovelace stated that he informed Seitz that he has not properly applied to the Off Island Referral Committee and needed to before any assessment could be made.  As of September 25, 2007, Lovelace told me that the Plaintiff has still not properly applied to the Off Island Referral Committee for medical assistance.

DATED: Utulei, American Samoa, September 25, 2007.

MARK R. HALES
P.O. Box 7
Pago Pago, AS. 96799
Telephone: (684) 633-4163
Facsimile:  (684) 633-1863
E-mail:     markhales@gmail.com

Subscribed and sworn before me
this 25th day of September, 2007

Notary Public, Territory of American Samoa
My commission expires

5

# OFF-ISLAND MEDICAL REFERRAL PROGRAM

## Policies and Procedures

I.    **PURPOSE:**

> The purpose of these policies and procedures is to provide rules and guidelines, assign responsibilities, and define the procedures to be used for the LBJ-Tropical Medical Center's Off-Island Medical Referral Program (OMRP) in dealing with American Samoa residents who have Residency Status.

II.    **POLICIES:**

1. Only patients in need of medical services that cannot be provided at the LBJ Tropical Medical Center will be referred for off-island medical care.
2. Only "Residents" of American Samoa will be referred.

3. To qualify for off-island medical referral, the patient must meet one of the categories set forth in **Chapter 6 Medical Treatment Section 13.0601 – Persons entitled to free services – Limitations-Extent.**

4. The patient referral must be covered under the LBJ Insurance Plan Document (see Appendix A – LBJ Insurance Plan Document).

5. The Off-island vendor of choice is NUAZ Limited.
   <u>Exceptions:</u>
   1. Medicare patients will be referred to Hawaii
   2. Stretcher cases (inability to move) will be referred to Hawaii
   3. Charitable Organizations
   4. Private Insurance

**<u>General Overview:</u>**

Off-island medical referrals of patients for treatment shall be the responsibility of the Off-Island Medical Referral Program Committee (MRPC), the Medical Referral Program Coordinator, the Chief Executive Officer, the Medical Director, and the Pre-certification review committee. Members of the MRPC comprise all Chiefs of Clinical Services.

LBJ shall design an Insurance Plan Document (PLAN). The Board of Directors of the ASMCA shall approve this Document. Changes to the Insurance Plan Document can be made at anytime with consent.  This plan shall be approved by the MRPC to guide its deliberations for off-island medical referral. The MRPC provides the *<u>request</u>* for an Off-island Referral. The *<u>request</u>* is reviewed by the Medical Referral Program Coordinator to determine if the referring procedure is covered by the LBJ Insurance Plan document. If covered under the plan, the Program Coordinator will forward to the CEO and Medical Director for approvals. Once senor management has given approval of the referral

request, the Program Coordinator completes the *Cost of Service (COS) Form* and forwards to CFO for approval. Once the COS Form is signed, the Program Coordinator will get authorization to prepare the approval letter from the Pre-certification committee Chair.

The primary or attending physician has authority to refer any patient in his care to the MRPC. For certain services, however, the primary or attending physician, or Medical Director, must obtain approval from the pre-certification committee. Before giving approval, the Pre-certification committee will consider if the service is covered under the LBJ PLAN for OIRP, medically necessary, and follows generally accepted medical practice.

This review and approval process is called a **pre-certification process**. Pre-certification is the final approval process to ensure medical treatments, procedures, place of treatment or devices meet medical necessity criteria prior to the services being rendered.

LBJ Medical Center is not obligated to provide off-island care for any patient. If such medical care is NOT AVAILABLE LOCALLY, and that such care will substantially improve the QUALTIY OF LIFE, and at an AFFORDABLE COST, the discretion of the ASMCA LBJ-TMC may refer a patient off-island for care.

In its deliberations, the MRPC will evaluate off-island medical interventions in relation to:

**Outcome benefits:**

- Improved health
- Quality of life
- Duration of life
- The probabilities of outcome

**Responsibility of LBJ – Tropical Medical Center:**

- ✓ LBJ shall provide Transportation of the patient and shall deal directly with Hawaiian Air for payment of all transportation cost (no local vendor is to be reimbursed for OIRP travel).
- ✓ LBJ shall provide a maximum, or cap, amount of $150,000 per patient per year.
- ✓ LBJ shall have a defined coverage Plan Document reviewed and approved by the MRPC annually.
- ✓ LBJ provider must perform a telephone conference or telemedicine conference with the accepting provider prior to arranging the transportation for the patient.

- ✓ LBJ shall instruct the patient as to where health care services will be perform, the intended length of stay, any pre-op or post-op inclusive services covered by the referral.
- ✓ Deviation from the assign health care facility shall result in loss of financial responsibility of LBJ for any medical service or other service while patient is off-island.
- ✓ All medically necessary escort services shall be paid by LBJ.
- ✓ All medical record charts will be purchased for the patient, if necessary, and become the property and placed in the LBJ medical chart.

**<u>Patient and Family Responsibility:</u>**

- ✓ Insured patients, to include Medicare patients, are responsible for co-payments, deductibles, and not medically necessary denials from Medicare.
- ✓ The self-pay patients shall be required to pay a co-pay of $500 and are responsible for any not medically necessary denials from LBJ insurance plan.
- ✓ There will be a comparison cost estimate provided to the patient based on Medicare PPS reimbursement rules, or the Hawaiian TPA, for the primary referral or the New Zealand's case manager's estimate. If the patient chooses the location with the higher price, the difference between these price estimates is the responsibility of the patient.

**<u>Additional Responsibility of Patient:</u>**

Upon return, patient must present to the primary attending physician who initiated the referral within 10 business days. <u>Failure to comply will result in loss of financial support from LBJ for any medical services provided while off-island on referral</u>.

Transportation for any family escorts and housing of the family shall be the patient/family responsibility, except for "minor" children requiring care.

Ground Transportation upon arrival shall be the patient responsibility, unless required in the LBJ insurance plan document.

All accommodations shall be the patient responsibility, other then hospitalization, or those arrange by the New Zealand case manager.

**FUNCTIONS AND REPSONSIBILITIES:**

**OFF-ISLAND MEDICAL REFERRAL PROGRAM COMMITTEE (MRPC)**
**Membership & Voting Rights of the MRPC:**
- ✓ Each Chief of Service (voting right)
- ✓ Medical Director (voting right)
- ✓ MRP Coordinator (no voting right)
- ✓ CNO, or designee (voting right)
- ✓ CEO, or designees (no voting rights)
- ✓ CFO, or designees (no voting rights)

The MRPC shall elect annually, the first meeting of each calendar year, its own chairperson and secretary.

The MRPC shall meet weekly to:
- ✓ Approve prior meeting minutes
- ✓ Re-Prioritize previous cases approved (acceptable rules need to be created)
- ✓ Hear new ***referral request*** from LBJ staff members (To approve a Request for OIR a quorum of five voting members must be present).
- ✓ Review active Off-island cases

The Primary or Attending provider shall present the proposed referral in a manner that is thorough, consistent and fair to ensure that:
- ✓ The medical condition under consideration is eligible for off-island care (See Appendix of LBJ insurance plan)
- ✓ The diagnosis or treatment will significantly affect patient outcome (i.e. prevent permanent disability, significantly improve quality of life and/or duration of life, (See Appendix of LBJ insurance plan - Medical Risks):
- ✓ Trends in Mortality by ages and time elapsed for determination of survival rates for persons with various medical impairments.
- ✓ Referral would not be unnecessary, inappropriate, unkind, unwise or unsafe.
- ✓ The off-island management plan is specific as to the coding of (MCD/DRG/ICD9/ICD9PROC/) primary diagnose anticipated treatment procedures and incorporate limitations or medical necessity rules where appropriate (See Appendix of LBJ insurance plan).

The physician presenting a complete and comprehensive review of the patient's case is permitted reconsideration if there were gross omissions of medical information.  In addition, Physician should include basic frequency data.

The members of MRPC will have an open vote for approval or disapproval of a referral. ALL VOTING MEMBERS IN ATTENDENCE MUST VOTE (No abstentions). The result will be based on simple majority.

The chairman will record the decisions made and sign the **Request for OIR** form on behalf of the MRPC.

The Secretary will keep records of the decisions and recommendations of the committee.

The referral must meet each one of the following criteria to be approved by the MRPC – definitions section:

    a.  The facility must provide the type of services for the patient.

    b.  There is no known reason why the patient should not receive quality care at the facility.

    c.  There is no other facility known that will accept this type of patient at a lower cost for the same quality care.

Retrospective reimbursement for medical care given <u>without prior authorization</u> will not be considered.

**Responsibility of the Off-island Medical Referral Patient Coordinator:**

Provides all administrative support for the Off-Island Medical Referral Program.

Arranges the telemedicine referral conference with the provider referring the patient and the provider accepting responsibility of the patient.

Establish contract with LBJ's designated case manager in New Zealand, or Hawaii, to arrange transportation (dates of departures, dates of estimated returns) and completes a Travel Approval form (TA).

Establish arrangements for escorts when case warrants an escort.

Determines if the patient is Self-pay or has existing insurance and completes the *Cost of Service (COS) Form* :

    ✓  If the patient is self-pay an estimated Length of Stay is determined and the co-pay is calculated (LOS * $50). The Coordinator will direct the patient, or family, to the Financial Consolers office for with the co-pay estimate form to create an account and sign a payment agreement form.

    ✓  If the patient is covered by insurance, the Coordinator will determine the amount of deductible and co-pay estimate that the

patient, or family, will be responsible. The patient with insurance will be directed to Hawaii and only the airfare will be paid as a result of the referral.

✓ The comparison of off-island service location is completed, if requested by the patient, and amount of variance is provided for the patient/family to review.

Once the request is approved, the RPC will assist the referring physician in completing and coordinating the transfer of the patient.

All U.S. national and U.S. citizen patients are required to provide copies of their birth certificates or passports in order to qualify or be eligible for off-island care.  The RPC will verify the immigration status of the patient with the Department of Legal Affair's Immigration Division.  The eligibility and residency status of the patient if he/she is not a U.S. national.

The RPC will assist in determining the appropriate medical facility to which the patient is to be referred.  If agreements exist with the medical facility with regard to off-island referral patients, said agreement would dictate where the patient will be referred.

Other administrative responsibilities of the RPC include, but not limited to the following:

✓ Maintain the official file of the off-island medical referral.
✓ Secure travel authorization, airline reservation for patient and escort.  Arrange special equipment such as; oxygen, IV's and etc., if required.
✓ Apply for visas or visa waivers if required.
✓ Arrange for local transportation for the patient to the airport (patient only).
✓ Notify the receiving case manager's of the patient's arrival date, airline and flight numbers, time of arrival, escort and special equipment if required.  Request ambulance service if required.
✓ Obtain signatures of the Chief Executive Officer, Chief Financial Officer, and the ASMCA Board OIRP sub-committee Chair on patient off-island ***authorization letter***.
✓ Provide the Chief Executive Officer and Chief Financial Officer, and Medical Director with copies of all off-island referral ***authorization letters***.
✓ Provide the Off-Island Medical Referral Program Committee with progress reports of our referral patients from various off-island providers.

&#10003;    Update the Off-Island Medical Referral Program Committee with information pertinent to the Off-island program.

**Responsibility of Referring/Attending Physician**

The Referring Physician is the primary attending physician who initiates a referral and assumes overall responsibilities for managing a patient referral. Prior to presentation to MRPC, the Referring Physician will conduct the duties outlined below by observing the following steps:

Evaluate the patients activity level and performance status; physical characteristics, disease symptoms, functional abilities, psychological state, social roles, and treatment side effects.

Conduct a pre-referral diagnostic work-up in order to determine that a patient requires medical treatment or diagnostic procedures beyond the capability of the staff or equipment of the LBJ. Based on this diagnostic work-up, the attending physician will prepare the Medical Referral Form, which the MRPC uses to evaluate the ***request for referral***.

Discuss fully with the patient all potential risks, complications and benefits that may ensue from proposed medical intervention.

Consider patient beliefs and desires in relation to proposed medical intervention: (e.g., and end-stage renal patient should not be referred if he declines dialysis; a Jehovah's Witness who will decline transfusion should not be referred for surgery which will likely require transfusion).

Upon concurrence of the Chief of Service, complete in full the (MFR) medical referral form, and prepare a case presentation for the MRPC. The completed referral form will be given to the Referral Coordinator who will make a copy for each MRPC member. Patient medical records including lab reports, x-rays, etc. should be available for MRPC review.

A consultation with a specialist at the receiving hospital is required and opinions appropriately recorded, of appropriate case strategy.

Advise the patient of the MRPC's decision on approval or disapproval of the referred proposal.

Upon approval of the referral request by the Off-island Medical Referral Program committee the referring physician will make all the necessary arrangements with the <u>receiving physician</u> and hospital to effect smooth transition and transfer of the patient. The physician will also coordinate with the Off-island Medical Referral Coordinator to ensure all necessary

records and documents on the patient are properly compiled to be transmitted along with the patient. If a medical escort is required, assure that appropriate preparations, including life-supporting equipment, if necessary, are available.

The referring physician will also complete the Fitness for Air Travel form for the patient.

For budgeting purposes, it is critical that an estimated length of stay in the hospital be determined prior to the patient's departure. The estimated number of days for hospital stay shall be placed on the documents. (LBJ Medical Center will not pay for any additional days, unless the attending physician or the receiving health care institution justify the need for extra hospitalization days).

Conduct follow up examination of the patient within one week of returning to American Samoa.

Determine that an off-island referral actually received medical services. Follow-up to make sure that a report of the treatment provided is received.

**Responsibility of LBJ Finance Division**

Initiates a file, in the billing office, for each off-island referral patient, upon receipt of a copy of the Off-Island Medical Referral Request form from the MRPC.

Prepares a Purchase Order based on the referring diagnosis and referring facility to encumber funds estimated to be required for each referral.

Receives invoices for all medical care patients.

All invoices from the health care providers will be audited prior to disbursement of payment. If LBJ has an agreement with Third Party Contractor to audit the off-island medical bills, payment will not be made until audits have conducted.

Maintains a complete record of the financial history of each off-island referral patient.

Prepares summary reports on the cost of the Off-Island Medical Referral Program.

Prepares and justifies budgets for the Off-Island Medical Referral Program.

Prepares and justifies budgets for the Off-Island Medical Referral Program.

**EMERGENCY REFERRALS:**

**Definition**:  An emergency is a situation where the patient's condition is such that delay in seeking approval of the MRPC at its regular weekly meeting may compromise the patient's life, limb or sight.

The referral proposal will be initiated by the primary physician as usual, endorsed by chief of the referring service and will require signatures of the chairman of MRPC, Medical Director, and CEO, or his designee, before the patient can be transferred off-island.

When nether the chairman of MRPC, or Medical Director, their deputies shall be assigned to the CEO, or his designee.

Following an emergency referral, the details will be presented at the next scheduled meeting of the MRPC for their information and documentation.

**PRE-CERTIFICATION:**

**Definition: A** process used by LBJ – Tropical Medical Center to control health care costs. The precertification process is a utilization management tool used to control OIRP expense. This "tool" must be used uniformly with care, concern, and compassion Delay that compromises a Patient's care or clinical outcome is not acceptable as part of a cost-containment screening process. The timely and appropriate approval of patient referrals to hospitals and physicians must be of paramount consideration in any established approval process or procedure. The following guidelines are meant to help achieve the goals of utilization management and optimal care for patients.

1. The precertification process must be available in writing for use by the attending physician.
2. The precertification process must be available and clearly presented in all insurance plans and health care contracts so that the patient is aware of the requirement.
3. The contracting agency's response personnel must be available 24 hours a day, 7 days a week, including holidays, and must be knowledgeable in patient care. Fax or electronic communication should also be available to be used in place of telephone contact as a way to save time.

4. When disagreements about recommended management occur between referring physicians and screening personnel for the OIRP plan, a system of immediate response by health care plan physicians knowledgeable in the patient's care needs to be in place to resolve the concerns of the referring physician.

5. If the patient's situation is related to an emergency, precertification should be waived, as the primary consideration must be to protect the patient's life and health.

6. In the case of a non-acute precertification conflict, an immediate review process by physicians knowledgeable in the patient care should be available to resolve the problem.

7. Unnecessary delays in treatment must be avoided—most importantly to prevent endangering the patient's life and health and also to reduce excessive non-clinical administrative time required of referring physicians. The OIRP plan document shall compensate the physician's office for all costs involved in performing the work of precertification.

Appendix "A"
LBJ Insurance Plan Document

1. "**LBJ Insurance Plan exclusions**":

1.1     Acquired Immune Deficiency (AIDS), HIV infections, and related conditions.

1.2     Alcohol an drug dependence services.

1.3     Any condition (e.g. established terminal cancer) that only requires palliative treatment.

1.4     Any condition for which the expected survival rate, even with treatment, isles than six (6) months.

1.5     Tuberculosis, and Hansen's disease, except cases where the MRPC determines that the patient can be treated appropriately outside of American Samoa and the patient has complied with prescribed treatment administered at LBJ.

1.6     Congenital defects or abnormalities, except cases where the MRPC determines that the patient can be treated appropriately outside of American Samoa and the patient has complied with prescribed treatment administered at LBJ.

1.7     Cosmetic services, except in such cases where the MRPC determines that severe emotional and psychological damage can be avoided only through referral care.

1.8     Corrective appliances and artificial aids, such as braces, prosthetic devices, eyeglasses and hearing aids that can be obtained and fitted in American Samoa.

1.9     Custodial, domiciliary, or convalescent care.

1.10    Dental service, except an accidental injury to natural teeth or jaw that could not be treated locally.

1.11    Durable medical equipment.

1.12    Services which are "experimental" (i.e. used in research or on animals) or "investigative" (i.e. used only on a limited number of people or where the long term effectiveness of the treatment has not been proven in scientific, controlled settings).

1.13    Eye refraction for glasses, eyeglasses, eye exercises, contact lenses and/or fittings and refractive surgery to correct vision problems.

1.14    Plate Coagulation treatment.

1.15   Hydrocephaly cases previously referred and treated with shunt who now have abnormal motor or mental development, except if the shunt is blocked.

1.16   Long-term physical therapy and rehabilitative services that can be provided at LBJ.

1.17   Mental retardation and non-correctable mental deficiencies.

1.18   Organ transplantation except corneal and renal transplant if considered to be a more cost-effective treatment.

1.19   Services not medically indicated including interrupted pregnancy, reversal of sterilization, fertilization by artificial means, and services related to sex transformations or sexual dysfunction and inadequacies.

1.20   Temporomandibular joint disorders and related diseases.

1.21   Acute psychiatric conditions not related to organic diseases.

1.22   Progressive or degenerative neurological and muscular disorders except for diagnostic investigation.

1.23   Cerebro-vascular accidents (strokes).



# LBJ Tropical Medical Center
### P.O. Box LBJ
### Pago Pago, American Samoa 96799

*Commitment to Healthcare*
*Excellence*

September 20, 2007

To:     Mr. Terry Lovelace
        Hospital Attorney

From:   Judith A. Payes, RHIT
        Acting, HIM Director

Re:     Attached Spreadsheet of Richard Majhor's Documented Outpatient Treatments;
        March 1, 2007 to September 10, 2007 – LBJ #17-58-28

I, Judith A. Payes, RHIT, whose signature appears below do hereby certify that the
information is true and correct.

*Judith A. Payes, RHIT*

**L B J  T r o p i c a l  M e d i c a l  C e n t e r**
P.O. Box LBJ
Pago Pago, American Samoa 96799



*Commitment to Healthcare*
*Excellence*

September 21, 2007


To:    Mr. Terry Lovelace
       Hospital Attorney

From:  Judith A. Payes, RHIT

Re:    Addendum to Spreadsheet of Richard Majhor's Documented Outpatient
       Treatment; Prescribed Medications.


07-13-07       Demerol 25mg/Phenergan 12.5mg IM.

07-14-07       Demerol 25mg/Phenergan 12.5mg IM


I, Judith A. Payes, RHIT, whose signature appears below do hereby certify that the
above information is true and correct.


*Judith A. Payes, RHIT*

# Documentation: Richard Majher Outpatient Treatments
## Period: March 1, 2007 to September 10, 2007

| Date / Time of LBJ Visit | Clinic | Physician | Chief Complaint | Discharge Diagnosis | Treatment Prescribed |
|---|---|---|---|---|---|
| 03/10/07@20:04 | Emergency Room | Erica Aoelua | Dizziness; Vomiting | Chronic neck pains; Headaches; Narcotic Dependence | Demerol 100mg; Phenergan 25mg IM stat |
| 03/15/07 | Medical | Iotamo Saleapaga | Loss of consciousness 10-20 minutes | Severe Headache with pain; Insomnia | Demerol 100mg; Phenergan 25mg IM |
| 03/25/07@18:07 | Emergency Room | Lotonoamoni Maae | Headache | Chronic pain-post neck | Demerol 100mg; Phenergan 25mg IM stat |
| 04/06/07@19:41 | Emergency Room | Robert Gayapa | Severe neck pain-back of neck | Chronic neck pain; Narcotic Dependent | Demerol 100mg; Phenergan 25mg I.M. stat; Xanax 1mg; NOCTE x2 doses, refill of Percocet tablets |
| 04/08/07@20:25 | Emergency Room | Erica Aoelua | Headache with neck pain | Chronic headache | Demerol 75mg; Phenergan 25mg IM. stat; Xanax 1-2mg prn |
| 04/18/07@19:19 | Emergency Room | Robert Gayapa | Dizziness and chest pain | Viral syndrome; syncope | Demerol 100mg; Phenergan 25mg IM stat |
| 04/19/07@20:05 | Emergency Room | Richard Ripley | Headaches; Dizziness | Dependent case on pain killers; chronic neck pain; diarrhea | IVF 500cc over next 2 hours; Demerol 125mg; Phenergan 30mg IM. stat |
| 04/20/07 | Medical | Iotamo Saleapaga | Chronic neck pain; syncope; headache; dizziness | Syncopal Episode ?; Headaches; Chronic; Insomnia; Neck pains | None |

1

| Date / Time of LBJ Visit | Clinic | Physician | Chief Complaint | Discharge Diagnosis | Treatment Prescribed |
|---|---|---|---|---|---|
| 04/20/07@16:24 | Emergency Room | Robert Gayapa | Pain-left shoulder | Left shoulder sprain | Demerol 100mg; Phenergan 30mg IM. stat |
| 04/23/07@01:29 | Emergency Room | Erica Aoelua | Headaches; dizziness; shortness of breath with chest pain | Chest pains; Headache/Migraine | Demerol 100mg; Phenergan 25mg IM. stat |
| 04/27/07@12:37 | Emergency Room | Matthew Davis | Chest tightness; tightness in neck | Chronic cephalgia; neck pain; narcotic dependent; recent development of syncopy ? | Demerol 75mg; Phenergan 25mg; Xanax 1mg given; Flouoxetine 20mg daily |
| 05/04/07@00:49 | Emergency Room | Bienaida Vergara | Neck pain radiating to head, cannot sleep | Chronic headaches; Insomnia; Chronic neck pain syndrome; Narcotic Dependence | Demerol 50mg; Phenergan 25mg IM.; Xanax 1mg to go. |
| 05/09/07@11:30 | Surgical | Akapusi Ledua | Syncope and neck pain radiating to head | For report | ------- |
| 05/20/07@20:16 | Emergency Room | Erica Aoelua | Chronic neck pain and back pain syndrome | Chronic pains | Demerol 75mg/Phenergan 25 I.M. |
| 05/24/07@17:38 | Emergency Room | Bienaida Vergara | Headaches; neck pain | Chronic pains; Narcotic dependent | Demerol 50mg; Phenergan 25mg I.M.; given Xanax 1mg p.o. to go |
| 05/26/07@20:34 | Emergency Room | Fiatele Porotesano | Left temporal headaches | Acute viral illness; seeking narcotic ? | 50mg Demerol IM; Zanax 2mg p.o. |

| Date / Time of I.B.J. Visit | Clinic | Physician | Chief Complaint | Discharge Diagnosis | Treatment Prescribed |
|---|---|---|---|---|---|
| 05/31/07@20:05 | Emergency Room | Annie Fuavai | Headaches | ? Tension headaches; Narcotic Dependent | Demerol 100mg; Phenergan 25mg IM stat |
| 06/05/07@20:58 | Emergency Room | Lotonoamoni Maae | Headaches | Chronic pain; Multiple contusions secondary to fall | Demerol 100mg; Phenergan 25mg IM; Xanax 2mg p.o. to go |
| 06/09/07@19:25 | Emergency Room | Lotonoamoni Maae | Pain on head, shoulders and rib area | Chronic recurrent pain; Demerol IM dependent | Demerol 100mg; Phenergan 25mg IM; Xanax 2mg |
| 06/11/07@20:52 | Emergency Room | Annie Fuavai | Neck pain-fell backwards | Musculoskeletal pain | Demerol 100mg; Phenergan 25mg IM stat |
| 06/13/07 | Medical | Iotamo Saleapaga | Severe neck pain and headaches | Headache; Syncopal Episode ? Etiology; Chronic neck pain | 11:55 a.m. Emergency Room Demerol 100mg; Phenergan 50mg IM. |
| 06/14/07@03:43 | Emergency Room | Fiatele Porotesano | Headache | ? Malingering; Demerol Dependent | Demerol 50mg; Phenergan 25mg IM; Xanax 2mg p.o. |
| 06/25/07@16:42 | Emergency Room | Annie Fuavai | Headaches | Tension headache; Narcotic Dependent | Demerol 100mg; Phenergan 25mg IM stat |
| 07/02/07@13:31 | Emergency Room | Matthew Davis | Neck pain; Headache | Chronic cephalgia; neck pain; Narcotic Dependence; Upper Respiratory Infection | Demerol 100mg; Phenergan 25mg IM; Robitussin CF, Cough drops |
| 07/11/07@17:45 | Emergency Room | Lotonoamoni Maae | Neck pain; Headache | Chronic recurrent neck pains; probably Narcotic Dependent with increasing tolerance | Demerol 125mg (ordered) 100mg (given); Phenergan 25mg IM; Xanax 2mg p.o. |

3

| Date / Time of LBJ Visit | Clinic | Physician | Chief Complaint | Discharge Diagnosis | Treatment Prescribed |
|---|---|---|---|---|---|
| 07/13/07@19:05 | Emergency Room | Lynn E. Taylor, CNP | Here for pain shot | Chronic pain syndrome; Narcotic Dependence | Medication for pain (no mention of medication or dosage) |
| 07/14/07@18:59 | Emergency Room | Lynn E. Taylor, CNP | Requesting his "Demerol and Phenergan". Tells his provider he wants 125mg of Demerol and 50mg of Phenergan. | Controlled drug dependence with drug seeking behavior; chronic pain syndrome (per patient) | Will give small amount of Demerol tonight along with Phenergan. (no mention of dosage) |
| 07/20/07@21:15 | Emergency Room | Lynn E. Taylor, CNP | Requesting medication for his headache, insomnia and pain | Chronic pain syndrome; Polysubstance dependency | Amitryptiline 50mg 1 p.o.; Benadryl 25mg 1 p.o.; Motrin 800mg 1 p.o. |
| 07/25/07@14:14 | Emergency Room | Sean A. Stracensky | Chronic neck pain | Chronic pain; Polysubstance dependency | Demerol 75mg; Phenergan 37.5mg IM; Xanax refill (10 tablets). |
| 07/31/07@14:10 | Emergency Room | Sean A. Stracensky | Chronic neck pain; Headache | Chronic pain; Insomnia; Polysubstance abuse/dependency | Toradol 60mg IM for pain; Refill Xanax 1mg 1-2 tablets p.o. QHS (10 given); Zantac 150mg p.o. bid prn for reflux at patient's request |
| 08/02/07@10:30 | Emergency Room | Fiatele Porotesano | Syncope | ? Syncope | Toradol 60mg IM; Restoril 15-30mg; Amitriyptiline daily; TCI prn |
| 08/09/07@13:40 | Emergency Room | Sean A. Stracensky | Chronic neck pain; Headache | Chronic pain; h/o Polysubstance dependence; Insomnia | Toradol 60mg IM; Temazepam 15mg 1-2 tablets p.o. (#14) |

| Date / Time of LBJ Visit | Clinic | Physician | Chief Complaint | Discharge Diagnosis | Treatment Prescribed |
|---|---|---|---|---|---|
| 08/12/07@22:33 | Emergency Room | Lotonoamoni Maae | Severe headache; Blurred vision right eye | Chronic recurrent neck pain | Valium 10mg IM stat |
| 08/14/07 | Medical | Iotamo Saleapaga | Chronic neck pain syndrome; Headache; Insomnia | Chronic neck pain syndrome | Oxycodone HCL 5mg 100 tablets; Xanax 1mg 100 tablets; Atenolol 25mg (30 tablets refill 3); Amitryptiline 50mg |
| 08/20/07 | Emergency Room | Annie Fuavai | Neck pain | Chronic Musculoskeletal pain | None |
| 08/30/07 | Medical | Iotamo Saleapaga | Chronic neck pain; Recent severe headaches | ? Migraine headache severe; Chronic neck pain syndrome | Demerol 100mg; Phenergan 25mg IM stat |
| 09/01/07 | Emergency Room | Fiatele Porotesano | Headaches | Chronic neck pain; ? narcotic seeking | Toradol 60mg IM given |
| 09/03/07 | Emergency Room | Matthew Davies | Chronic posterior neck pain | Chronic neck pain | Naprosyn given with Mylanta (no mention of dosage) |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RICHARD MAJHOR | ) | CIVIL NO. 07-1465 (RWB) |
| Address: | ) | |
|     Tafuna Correctional Facility | ) | |
|     PO Box 1011 | ) | |
|     Pago Pago, American Samoa | ) | SWORN AFFIDAVIT OF |
|     96799 | ) | IOTAMO T. SALEAPAGA, M.D. |
|             Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KIRK KEMPTHORNE, et al | ) | |
| | ) | |
|             Defendants. | ) | |
| | ) | |
| _____ | ) | |

| | | |
|---|---|---|
| TERRITORY OF AMERICAN SAMO | ) | |
| | ) | SS. |
| VILLAGE OF FAGA'ALU | ) | |

IOTAMO T. SALEAPAGA, M.D., being first duly sworn on oath, deposes and says:

1.     I am a Medical Doctor licensed by the Health Regulatory Board of American Samoa to practice medicine.

2.     Richard Majhor has been a patient of mine since about or before 2003.

3.     On or about June 13, 2007, I was approached by Mr. Majhor's attorney in American Samoa, Andrew Stave. Mr. Stave explained that he and Mr. Majhor's attorney in Honolulu, Eric Seitz, were attempting to have Mr. Majhor's place of incarceration moved from the Correctional Facility in American Samoa to someplace in California, perhaps his mother's residence. Mr. Stave requested that I prepare a letter explaining Richard Majhor's medical condition and emphasize the benefits he could enjoy by residing where more sophisticated medical care is available.

4.     To accommodate my patient, I wrote the letter dated June 13, 2007, where I stated, in part:

> *"This patient needs neurology evaluation to include EEG,*
> *MRI and may be Angiography. He also need cardiology*
> *evaluation which may include Echocardiogram, Holter*
> *monitor and may be catherization. These special*

*procedures are not available at LBJ Medical Center*
*American Samoa but off-Island.*

5.    My June 13, 2007 correspondence also notes an unremarkable history and physical examination. Mr. Majhor's complaints of pain are subjective.

6.    Mr. Majhor has presented to the Medical Clinic and Emergency Room at LBJ Tropical Medical Center and has never been denied treatment.

7.    It is my professional medical opinion that Mr. Majhor's medical condition was not life threatening and he was not an appropriate candidate for referral to the Off-Island Referral Committee at that time. The correspondence of June 13, 2007, as cited by Eric Seitz, was never intended as a referral to the Off-Island Referral Committee and should not be misconstrued as such.

Dated: _9/20/07_                         _____
                                          Iotamo T. Saleapaga, MD

Dated: _9/20/2007_                       _____
                                          Notary Public